CARNATION COMPANY,
Plaintiff-Appellant,

v.

T.U. PARKS CONSTRUCTION COMPA-
NY, Defendant-Appellee.

No. 86–5237.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 26, 1987.

Decided April 21, 1987.

R.R. Ruth, Jr., James W. Milam (argued), Luther, Anderson, Cleary and Ruth, William T. Alt, Chattanooga, Tenn., for plaintiff-appellant.

George Derryberry (argued), Miller and Martin, Chattanooga, Tenn., Virginia Anne Sharber, for defendant-appellee.

Before RYAN and BOGGS, Circuit Judges, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

This appeal presents two questions. The first is whether, in a diversity case, a claim is barred in federal district court if it would be barred by the state's compulsory counterclaim rule if asserted in a state court of the state in which the district court sits. If

the answer to this question is that the claim would be barred in federal court, the second question is whether this appellant's claim would be barred by the state's compulsory counterclaim rule if asserted in a Tennessee court. The district court answered both questions in the affirmative and dismissed appellant's action. We agree with the district court and therefore affirm.

Plaintiff-appellant, Carnation Company (Carnation), filed a diversity suit against defendant-appellee, T.U. Parks Construction Company (Parks), in the Chancery Court of Hamilton County, Tennessee in Chattanooga on July 21, 1983, alleging breach of contract by Parks in constructing an office building and warehouse there for Carnation and seeking damages of $175,-000.00. On August 11, 1983, Parks filed an answer denying Carnation's claim and asserting a counterclaim against Carnation for failure to pay retainage in the amount of $5,214.00. On February 25, 1985, Carnation entered a voluntary dismissal without prejudice of its suit against Parks, and the same day it filed the instant action asserting the same claim, this time for $500,-000.00, in the federal district court for the Eastern District of Tennessee. Parks' counterclaim, however, remained pending in the Chancery Court.

On April 1, 1985, Parks filed its answer in the district court in which it pleaded, *inter alia*, that its claim against Carnation to recover retainage was pending in the Chancery Court and that its claim "will give rise to the affirmative defenses of res judicata or collateral estoppel" which defenses Parks asserted. Parks also counterclaimed for the retainage in the federal court action but expressly pleaded that it continued to rely on and intended to enforce its claim for retainage pending in the Chancery Court.

On May 15, 1985, the day before Parks' claim for retainage was to go to trial in the Chancery Court, an agreed judgment was entered in favor of Parks and against Carnation for the full amount for which Parks had sued, $5,214.00, plus interest and costs and such judgment became final.

Thereafter, on July 31, 1985, Parks filed in district court a motion for summary judgment, supported by the record in the Chancery Court, asserting that because Carnation's claim against Parks was a compulsory counterclaim to Parks' claim against Carnation in the Chancery Court and because Parks' judgment against Carnation was now final, Carnation's claim against Parks in district court was barred. The district court agreed and dismissed the action.

## I

The first question we must answer is whether, assuming Parks is correct that Carnation's claim would be barred if it were asserted in a Tennessee court by the state's compulsory counterclaim rule, Carnation's claim is barred in the federal district court sitting in diversity in Tennessee.

This question takes us back, of course, to *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), overruling *Swift v. Tyson*, 16 Pet. 1, 10 L.Ed. 865 (1842), which had held that federal courts sitting in diversity were free to apply "general" law as conceived by federal courts in resolving questions of substance as distinguished from questions of procedure. In *Erie Railroad*, the Court held that the federal district court was required, under a proper interpretation of the Judiciary Act of 1789 and, indeed, by the Constitution, to apply the law of the state in which it sits in resolving questions of substantive law.

The Court in *Guaranty Trust Company v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), applying the doctrine of *Erie Railroad*, held that, although the diversity action in the district court in New York sought equitable relief and therefore was on the "equity side" of the court, the court must apply the same statute of limitations as would a New York state court. In reaching this conclusion, the Court stated:

And so the question is not whether a statute of limitations is deemed a matter of "procedure" in some sense. The question is whether such a statute concerns

merely the manner and the means by which a right to recover, as recognized by the State, is enforced, or whether such statutory limitation is a matter of substance in the aspect that alone is relevant to our problem, namely, does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?

It is therefore immaterial whether statutes of limitation are characterized either as "substantive" or "procedural" in State court opinions in any use of those terms unrelated to the specific issue before us. *Erie R. Co. v. Tompkins* was not an endeavor to formulate scientific legal terminology. It expressed a policy that touches vitally the proper distribution of judicial power between State and federal courts. In essence, the intent of that decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court. The nub of the policy that underlies *Erie R. Co. v. Tompkins* is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away should not lead to a substantially different result.

*Id.* at 108–09, 65 S.Ct. at 1470.

*See also Angel v. Bullington,* 330 U.S. 183, 186–87, 67 S.Ct. 657, 659, 91 L.Ed. 832 (1947).

In *Woods v. Interstate Realty Company,* 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949), the Court of Appeals for the Fifth Circuit had held that, in a diversity case, where the contract sued on was not void under state law but was only unenforceable in state courts, the contract could

be enforced in a federal court in that state. The Supreme Court reversed, stating again that, where a federal court's jurisdiction is based on diversity, it is in effect another court of the state.

Carnation argues strenuously that because Tennessee has never held its compulsory counterclaim rule to be other than a rule of procedure and indeed is included in the state's Rules of Procedure, it should be so treated in applying the *Erie Railroad* doctrine. But as demonstrated by the holding in *Guaranty Trust,* it is immaterial for present purposes even if Tennessee labels the rule as "procedural"; it is the effect that a Tennessee court would give to the rule if Carnation were seeking to assert its claim in state court that is determinative.

This point is best illustrated by *Sampson v. Channell,* 110 F.2d 754 (1st Cir.),[1] *cert. denied,* 310 U.S. 650, 60 S.Ct. 1099, 84 L.Ed. 1415 (1940), an opinion written shortly after *Erie Railroad* and cited with approval by *Guaranty Trust,* 326 U.S. at 110, 65 S.Ct. at 1470. A diversity action was brought in the federal district court in Massachusetts growing out of an automobile accident in Maine. Under Maine law, the plaintiff had the burden of proving no contributory negligence, but under Massachusetts law the defendant had the burden of proving contributory negligence. The district court, over plaintiff's objection, applied Maine law and charged the jury that plaintiff had the burden. The verdict and judgment were for the defendant.

On appeal, the First Circuit first determined that, for *Erie Railroad* purposes, the question as to where to place the burden of proof with respect to contributory negligence was a question of substantive law because the allocation of the burden could well determine the outcome of the case. The court pointed out that the theory of *Erie Railroad* was that the federal court sitting in diversity was in effect another state court and therefore the result

---

1. This very interesting opinion by Judge Calvert Magruder, who had just joined the Court of Appeals from academia, has been the subject of much discussion, great praise and some criticism. *See* Freund, On Law and Justice, p. 224 *et seq.* In any event, the ruling by the First Circuit in this case was later approved by the Supreme Court in *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

should be the same whether the case is tried in federal or state court. Accordingly, the federal court should apply Massachusetts law rather than federal law. Under Massachusetts law, however, particularly its conflict of laws rule, the allocation of the burden of proof was labelled a rule of "procedure" and a Massachusetts court would, as a rule of procedure, apply its rule placing the burden on the defendant rather than the Maine rule, where the accident occurred, placing the burden on the plaintiff. Nevertheless, the First Circuit held that the district court was required by *Erie Railroad* to apply the Massachusetts rule placing the burden on the defendant since this would enforce the policy of obtaining the same result whether the case was tried in federal court or state court in Massachusetts.

Accordingly, in determining whether we must give effect to the Tennessee compulsory counterclaim rule, it is immaterial whether Tennessee considers its rule to be procedural or substantive.

In *Cleckner v. Republic Van and Storage Company, Inc.,* 556 F.2d 766 (5th Cir. 1977), Republic moved household furnishings for Cleckner after which Cleckner made a claim for damage. Republic denied the claim, and Cleckner refused to pay the moving charge. Republic then sued Cleckner in a Florida state court and in due course moved for summary judgment. Although Cleckner agreed to pay the full amount claimed, through some mix-up, the proper amount was not initially tendered and Republic obtained a summary judgment against Cleckner. Thereafter, Cleckner sued Republic in a federal district court in Florida for the damage to the furnishings. The district court sitting in diversity, for the reason that Cleckner's claim would be barred under the Florida compulsory counterclaim rule, held that it was barred in federal court and dismissed the action. The Court of Appeals affirmed on the basis of the holdings of *Guaranty Trust, Angel v. Bullington* and *Woods v. Interstate Realty, supra,* pointing out that in a diversity case, a federal court in Florida should reach the same result as would a Florida state court.

In *Texas Citrus & Cattle Co. v. Kelley,* 591 F.2d 439 (8th Cir.1979), Kelley, an attorney, sued Texas Citrus and its president, Clouse, in an Arkansas state court to recover an attorney's fee. Thereafter, Texas Citrus and Clouse, relying on diversity jurisdiction, sued Kelley for legal malpractice in a federal district court in Arkansas. Kelley then obtained a summary judgment for the attorney's fee against Texas Citrus and Clouse in state court, which became final, and moved for summary judgment in the federal court action. He contended that the judgment he obtained in state court barred the action in federal court on the basis of res judicata. The district court determined that, under Arkansas law, the malpractice claim in federal court was required to be asserted as a counterclaim to Kelley's suit in the state court and therefore dismissed the federal court action on the basis of res judicata.[2] The Court of Appeals affirmed.

■ Texas Citrus and Clouse argued on appeal that, even if their claim against Kelley was a compulsory counterclaim under Arkansas law, their claim was not barred by res judicata because their claim was pending in federal court as an independent action. Carnation makes a similar argument here. The Court of Appeals, however, dismissed this argument by pointing out that the compulsory counterclaim arose when Kelley filed his action in state court and there was not, at that time, any pending federal court action. Similarly, in the instant case, Carnation's claim remained a compulsory counterclaim to Parks' pending claim in state court when Carnation filed its action in federal district court.

■ Accordingly, we conclude that if Carnation's claim against Parks was, at the time summary judgment was granted to Parks in federal court, barred by the Tennessee compulsory counterclaim rule, Carnation's claim was barred in federal court.

---

**2.** As will be seen, *infra,* in giving such effect to a compulsory counterclaim rule, some courts describe the result as res judicata and others describe the result as waiver or estoppel.

## II

■ The remaining question is whether, by virtue of Tennessee's compulsory counterclaim rule, a Tennessee court would hold that Carnation's claim against Parks was barred at the time the federal district court granted summary judgment to Parks.

Parks relied on Tenn.R.Civ.P. 13.01 which provides in pertinent part:

**Compulsory Counterclaims.**—A pleading shall state as a counterclaim any claim, other than a tort claim, which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction, except that a claim need not be stated as a counterclaim if at the time the action was commenced the claim was the subject of another pending action.

As has been pointed out by a text writer, the result that a compulsory counterclaim is barred if not asserted as required by the rule is not spelled out in the rule itself. However, this result is well established by the cases, sometimes on a theory of res judicata and sometimes on a theory of waiver or estoppel. 6 C. Wright & A. Miller, Federal Practice and Procedure, § 1417 (1971). This text prefers the waiver or estoppel theory because in some cases in which a claim is held to be barred the doctrine of res judicata does not fit and also because the waiver or estoppel theory allows more discretion not to hold the claim is barred where to do so is manifestly unjust.

In *Quelette v. Whittemore,* 627 S.W.2d 681 (Tenn.App.1981) (application for permission to appeal denied by Tenn. Supreme Court February 8, 1982) Quelette leased from Whittemore property to be used for a dance studio. The lease provided that Whittemore would install a flooring suitable for use for such purpose. Quelette sued Whittemore in Chancery Court alleging that the floor installed was unsuitable for the purpose, that Whittemore refused to remedy the defects and therefore Whittemore was in breach of the lease and that Quelette was entitled to damages. Whittemore answered and counterclaimed for rent. During the course of the trial without a jury, as a result of an adverse ruling by the Chancellor with respect to the introduction of some evidence, Quelette voluntarily dismissed his suit, which he had an absolute right to do. At the conclusion of the hearing, the Chancellor determined that Whittemore was not entitled to recover rent for which he had sued and dismissed the counterclaim. Quelette then filed an almost identical complaint against Whittemore seeking damages for breach of the same lease, and the suit was dismissed on the ground that it was a compulsory counterclaim to Whittemore's claim for rent in the prior litigation.

The Tennessee Court of Appeals affirmed, stating:

The question therefore presented to us is whether, when [Whittemore] in the original suit elected to proceed on [his] counterclaim after [Quelette] voluntarily dismissed [his] suit, it was necessary that [Quelette's] "nonsuited" claim be asserted by way of counterclaim. We are of the opinion that [Quelette was] required to assert as a compulsory counterclaim [his] claim against [Whittemore] when [Whittemore] elected to proceed on [his] counterclaim.

. . . .

When [Quelette] voluntarily dismissed [his] lawsuit, the effect was as if [he] had never filed suit. [Quelette], by electing to voluntarily dismiss [his] lawsuit, [was] cast in the position of [defendant] to the counterclaim asserted against [him]. [Quelette's] original complaint was, by [his] action, dismissed and of no effect. [Quelette was] then required to assert [his] counterclaim against [Whittemore] or forever be barred.

*Id.* at 682.

Thus, it is clear that a Tennessee court would hold that Carnation's claim against Parks in federal district court was, at the time the district court granted to Parks a summary judgment, a barred compulsory

counterclaim. It would also appear, parenthetically, that, since Whittemore had failed to prevail in his suit to collect rent, a Tennessee court will enforce the compulsory counterclaim rule under circumstances to which res judicata does not apply.

 In *Clements v. Austin,* 673 S.W.2d 867 (Tenn.App., 1983) (application for permission to appeal denied by Tenn. Supreme Court December 1983) Austin sold land to Clements and thereafter Austin sued Clements on one of the purchase money notes. Clements answered and counterclaimed alleging breach of covenants in that there were outstanding mineral rights. At the conclusion of the trial, Clements took a voluntary nonsuit (dismissal), without prejudice, of the counterclaim, which Clements had an absolute right to do. In the same order, a judgment was granted to Austin for the principal and interest on the note. Shortly thereafter, Clements sued Austin again for breach of the covenants. The Chancellor entered judgment for Clements, and the Tennessee Court of Appeals, relying on *Quelette, supra,* reversed for the reason that the Clements claim was a compulsory counterclaim to Austin's suit to collect the note and was therefore barred.

On appeal, Clements argued that the compulsory counterclaim rule should not be so applied because of the language of the order dismissing the counterclaim in the prior proceeding. The court held, however, that although the order of dismissal of Clements' counterclaim provided that Clements was "allowed and permitted" so to do, this language did not preserve Clements' right to refile the claim because Clements had an absolute right to dismiss the counterclaim in any event. The court further construed the words "without prejudice" in the order of dismissal to mean that the dismissal could not be given effect as res judicata. The Tennessee Court of Appeals therefore held that, while the Clements claim was not barred by res judicata, it was barred by the compulsory counterclaim rule.

Accordingly, we conclude that, contrary to the contention of Carnation, the language in the order dismissing its suit in the Chancery Court did not preserve its right to maintain its suit against Parks in a Tennessee court.

## III

Since we have concluded that the federal district court in this diversity action was correct in ruling that it was required to apply the law of Tennessee and that under Tennessee law Carnation's claim was barred by the state's compulsory counterclaim rule, we AFFIRM the district court's judgment.