**PILLAR CORPORATION and Pillar Technologies, Inc., Plaintiffs,**

v.

**ENERCON INDUSTRIES CORPORATION and Ahlbrandt Systems, GmbH, Defendants.**

**No. 86–C–1116.**

United States District Court, E.D. Wisconsin.

April 6, 1988.

W.H. Levit, Jr., James G. Schweitzer and R. Jeffrey Krill, Godfrey & Kahn, Milwaukee, Wis., for plaintiffs.

Thomas O. Kloehn, Quarles & Brady, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

STADTMUELLER, District Judge.

Pillar Corporation and Pillar Technologies, Inc. (collectively, "Pillar") commenced this action against Enercon Industries Corporation ("Enercon") and Ahlbrandt Systems, GmbH ("Ahlbrandt") on October 14, 1986. Enercon was served that same day and Ahlbrandt was served on November 14, 1986 in Germany. The action was brought under the laws of the United States, particularly the Sherman Act, 15 U.S.C. § 1 *et seq.*, the Lanham Act, 15 U.S.C. § 1121 *et seq.*, and the Racketeer Influence and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 through 1968. The complaint also alleged various pendent state claims. Subject matter jurisdiction exists under the federal question statute, 28 U.S.C. § 1331, and venue is alleged to be proper under 15 U.S.C. § 15 and § 22, 18

U.S.C. § 1965 and 28 U.S.C. §§ 1391(b), (c), (d).

Enercon filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on November 3, 1986. The grounds for this motion are more fully set forth below. Ahlbrandt filed a motion to dismiss on December 5, 1986. The grounds for the motion are also more fully set forth below. The case was originally assigned to Judge Thomas J. Curran and was transferred to this branch of the court on October 7, 1987 following my appointment to the federal bench. At the time of transfer both motions were fully briefed.

Also pending before me is a patent action, *Enercon Industries Corp. v. Pillar Corp. and Pillar Technologies, Inc.,* Civil Case No. 86–C–740 filed by Enercon on July 18, 1986 (the "patent action"). The patent action was originally assigned to Judge Reynolds and was transferred to this branch on October 8, 1987. During the pendency of the motions in Case No. 86–C–1116, other motions were pending before Judge Reynolds in 86–C–740, including a motion to consolidate the two cases for all pretrial proceedings. That motion was denied by Judge Reynolds on March 13, 1987. Subsequently, Pillar filed a motion to file an amended answer and counterclaim in the case before Judge Reynolds and add Ahlbrandt as a counterdefendant. That motion was pending at the time the cases were transferred to this branch of the court, but has since been withdrawn by Pillar. By way of further background, had Judge Reynolds granted Pillar's motion to amend their answer and add counterclaims, the pending motions in 86–C–1116 would have become moot. The proposed counterclaims in the patent action would have encompassed all of the counts of the complaint in 86–C–1116. As Pillar has withdrawn that motion, I must address the pending motions in this case.

Other motions which are pending in this case include Ahlbrandt's motion for protective orders and to vacate notices of deposition, as well as a motion to quash a subpoena issued to Quarles & Brady, counsel for both defendants in this action. All of the above motions are now ready for resolution.

*Enercon's Motion to Dismiss*

Enercon filed its motion to dismiss pursuant to the Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. Grounds for this motion are that each of the counts of the complaint constituted compulsory counterclaims within the meaning of Fed.R.Civ.P. 13(a), which should have been pleaded as counterclaims in other cases. Specifically, Enercon contends that the antitrust and RICO counts should have been pleaded by Pillar in the case of *Pillar Corporation v. Enercon Industries Corp. and Clyde B. Jones,* 1986–1 CCH Trade Cases, ¶ 67,187 (Cir.Ct. Milw.Cty., July 21, 1986). Enercon also claims that the fraudulent advertising claim brought pursuant to the Lanham Act and the unfair competition claim should have been asserted by Pillar as a counterclaim in the patent action. Enercon argues that since the counterclaims were brought by Pillar in neither of those two cases, Pillar should be barred from proceeding with those claims in this action.

The issue regarding the counterclaims which should have been asserted in the patent action appears to have been resolved. By stipulation of the parties, and order entered June 10, 1987, these counterclaims were added to the patent action. As part of that stipulation, the parties agreed to cooperate in procuring the dismissal of the pertinent counts and paragraphs from Pillar's complaint. Therefore, that aspect of Enercon's motion to dismiss pertaining to compulsory counterclaims in the patent action appears to be moot. However, the parties have failed to file the appropriate documents to accomplish dismissal of those counts from the complaint in this case. Therefore, the parties are directed to submit the stipulation and proposed order within twenty (20) days of this order.

■ The portion of Enercon's motion to dismiss which is not moot relates to the counts arising under the Sherman Act, 15 U.S.C. §§ 1 and 2, the Wisconsin counterpart to the Sherman Act, Wis.Stat. §§ 133.-

03(1) and (2), counts arising under the civil RICO statute, 18 U.S.C. §§ 1962(a), (c) and (d) and Wisconsin's "little RICO" Act, Wis. Stat. §§ 946.80, *et seq.* There are also pendent state and common law claims of conspiracy to injure business in violation of Wis.Stat. § 134.01 and improper interference with a prospective contractual advantage. Enercon claims that each of these counts should have been pleaded in the Milwaukee Circuit Court action as compulsory counterclaims pursuant to Fed.R. Civ.P. 13(a).

Pillar argues first that Wisconsin has no compulsory counterclaims, *see* Wis.Stat. § 802.07(1), and so these actions need not have been pleaded as counterclaims in the state court action. Pillar also contends that the Sherman Act antitrust claims lie within the exclusive jurisdiction of the federal courts and so they had no basis for asserting those claims in the state court action. The Enercon Corp., et al. state court action was a trade secret case wherein Pillar alleged that Enercon had lured Jones from his position as a Pillar employee and sought to enjoin Jones' employment as well as the use of any confidential information to which he may have been privy. Enercon counterclaimed seeking relief under Wisconsin's antitrust statute. Pillar's trade secret case was ultimately settled and an eight-day bench trial on Enercon's antitrust counterclaim followed. At the close of Enercon's case, Pillar moved to dismiss pursuant to Wis.Stat. § 805.17(1) on the grounds that "upon the facts and the law, the plaintiff has shown no right to relief." The trial judge ultimately granted Pillar's motion and dismissed Enercon's antitrust counterclaim.

Enercon has cited *Cleckner v. Republic Van and Storage Company, Inc.,* 556 F.2d 766 (5th Cir.1977), *Podhorn v. Paragon Group,* 795 F.2d 658 (8th Cir.1986) and *Carnation Company v. T.U. Parks Construction Company,* 816 F.2d 1099 (6th Cir.1987) for the proposition that failure to assert compulsory counterclaims in a prior state court action precludes a subsequent federal court action based on those claims. In each of these three cases, the district court was sitting in diversity thereby implicating the substantive laws of the states in which the actions were brought. In each of these cases, the pertinent state procedural rules (*Cleckner*—Florida; *Podhorn*—Missouri; *Carnation*—Tennessee) provided for compulsory counterclaims. The courts first analyzed what the effect of failure to plead a compulsory counterclaim would be on a subsequent lawsuit in that state. In each case, the court upheld the dismissal of the federal diversity suit on the basis that had the suit been brought in state court, it would have been barred under that state's substantive law. As already noted, Wisconsin does not have compulsory counterclaim statute. Wis.Stat. § 802.07(1). It is optional with a party whether or not to file a counterclaim based on the facts upon which the original complaint is drawn. Failure to do so does not preclude the defendant from bringing a subsequent action to recover his own damages arising out of the same set of facts. *William H. Heinemann Creameries, Inc. v. Milwaukee Automobile Insurance Company,* 270 Wis. 443, 71 N.W.2d 395 (1955), *Schwabe v. Chantilly, Inc.,* 67 Wis.2d 267, 226 N.W.2d 452 (1975). Under the analysis from the above federal circuit cases, and the Wisconsin rule, it would appear that Enercon's argument is without merit and its motion should be denied.

However, Enercon rightly points out that each of the three federal cases were diversity cases, whereas the instant suit is based upon a federal question. Enercon argues that since this is a case based on federal statutes, the reasoning of *Chapman v. Aetna Finance Company,* 615 F.2d 361 (5th Cir.1980) is more appropriate. Based upon its reading of *Chapman,* Enercon contends that 28 U.S.C. § 1738, the full faith and credit statute, does not require this court to give full faith and credit to the Wisconsin rule. Since Wisconsin has elected not to provide for compulsory counterclaims, the state is in effect contradicting the federal compulsory counterclaim rule and the policy which supports it. Therefore, comity considerations should not apply and general choice of law rules indicate that this court should apply the rule of

Fed.R.Civ.P. 13(a) and thus dismiss Pillar's federal antitrust and RICO claims. It would follow that the state law claims would also have to be dismissed for lack of pendent jurisdiction. I am not persuaded by Enercon's arguments.

In the *Chapman* case, the question was "... whether petitioner's Truth in Lending claims were properly dismissed on account of their nonassertion as compulsory counterclaims in previous state foreclosure proceedings." 615 F.2d at 362. The court recognized that its analysis would not apply to federal diversity cases, 615 F.2d at 363 n. 6, and then proceeded to analogize the Georgia compulsory counterclaim rule to statutes of limitations which "would not ordinarily be entitled to full faith and credit in foreign jurisdictions." *Id.* at 363. Therefore, the full faith and credit clause did not compel dismissal of the instant suits.

The court then went on to analyze whether the principles of comity should compel operation of the Georgia statute. Since the Georgia statute was very similar to Rule 13(a) in both purpose and scope, the court held "... As a matter of comity, that Ga. Code Ann. § 81(a)–113(a) (Harrison 1978) operates in this circuit to preclude adjudication of truth in lending claims that are not asserted in precedent Georgia state court suits on the underlying debt." 615 F.2d at 364. However, the *Chapman* Court reversed the dismissal of the federal lawsuit holding that its decision was prospective only.

The difficulty in applying the *Chapman* rationale to the instant case is that *Chapman* dealt with claims brought under the Consumer Credit Protection Act, 15 U.S.C. § 1640. Subsection (e) of that statute states that civil actions can be brought in U.S. district courts or in any court of competent jurisdiction. Therefore, the claims involved in *Chapman* could have been brought in Georgia state courts, either as original claims or as counterclaims. However, Pillar's Sherman Act claims lie within the exclusive jurisdiction of the federal courts, *General Investment Company v. Lakeshore and MS Railway,* 260 U.S. 261, 287, 43 S.Ct. 106, 117, 67 L.Ed. 244 (1922), *Daley v. Town of New Durham,* 733 F.2d 4, 6 (1st Cir.1984). Therefore, even if Wisconsin did have a compulsory counterclaim statute, at least the federal antitrust claims could not have been brought in the state court action. Likewise, federal jurisdiction under the federal RICO statute may well be exclusive. *Kinsey v. Nestor Exploration, Ltd. 1981(a),* 604 F.Supp. 1365, 1370–1371 (E.D.Wash.1985) (holding that RICO claim originally brought in state court could not support a right of removal to federal court since the state court lacked subject matter jurisdiction in the first instance). I believe the concerns and substantive policies of both the federal antitrust and RICO statutes outweigh the procedural concerns Fed.R.Civ.P. 13(a), therefore Rule 13(a) does not mandate that these counts be dismissed.

Since I have determined that the federal claims are properly maintainable in this action, I find no reason, and note the defendants have cited none, to justify a denial of the exercise of this court's pendent jurisdiction over Pillar's state claims. Therefore, Enercon's motion to dismiss will be denied.

### *Ahlbrandt's Motion to Dismiss*

Ahlbrandt filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), (2), (6), for lack of subject matter jurisdiction, lack of *in personam* jurisdiction, and for failure to state a claim upon which relief can be granted. Rather than reply to Ahlbrandt's personal jurisdiction challenge, Pillar filed a motion to extend time in which to answer that aspect of the motion so that discovery could be conducted on the issue of Ahlbrandt's contacts with this forum. Pillar then noticed a deposition of Andreas Ahlbrandt, president of Ahlbrandt, as well as the partner in charge of the Ahlbrandt account at Quarles & Brady. The depositions were to elicit testimony to allow Pillar to respond to Ahlbrandt's personal jurisdiction argument. Ahlbrandt has filed a motion for protective orders and to vacate the notices of deposition. It appears from the representations made by Pillar's counsel that the parties have reached an agreement

to allow Pillar 21 days after the conclusion of discovery on the jurisdictional issues or 21 days after the issuance of an order by this court on the motion for protective orders within which to respond to the jurisdictional argument of Ahlbrandt. Therefore, Pillar's motion for an extension of time in which to respond to the personal jurisdiction motion, although not formally withdrawn, appears to be moot. Therefore, I will treat the motion for an extension of time as moot, and delay consideration on Ahlbrandt's motion to dismiss for lack of personal jurisdiction, and address only the motion to dismiss based on Fed.R. Civ.P. 12(b)(1) and (6) and the motion for protective orders.

In deciding Ahlbrandt's motion to dismiss I take all well-pleaded facts of the complaint as true and view all reasonable inferences from those facts in the light most favorable to plaintiffs. *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985).

### RICO Claims

■ Ahlbrandt has moved to dismiss the federal and state RICO claims (counts 7 through 11) for failure to state a claim upon which relief can be granted. Ahlbrandt bases its motion on Pillar's failure to allege a pattern of racketeering activity, failure to properly allege the predicate acts, and failure to properly plead injury caused by violations of the federal and state RICO statutes. For purposes of this motion, I need only address the pattern of racketeering activity argument.

The United States Supreme Court in *Sedima, S.P.R.L. v. Imrex Co. Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) stated:

> [T]he definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pat-

tern." the legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combine to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added).

*Id.* 105 S.Ct. at 3285 n. 14. The Seventh Circuit has attempted to resolve the difficulties associated with determining when activity constitutes a pattern within the meaning of RICO, as well as the requirement of "continuity plus relationship." The determination is a "fact-specific question encompassing many relevant factors." *Marshall & Ilsley Trust Co. v. Pate,* 819 F.2d 806, 809 (7th Cir.1987). To be sufficiently continuous, the "predicate acts must be ongoing over an identified period of time so they can be fairly viewed as constituting separate transactions, *i.e.* "transactions 'somewhat separated in time and place.'" *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986). "There must be a 'threat of continuing activity' by the defendants, not just one instance of fraud with a single victim." *Lippin Enterprises, Inc. v. Lee,* 803 F.2d 322, 324 (7th Cir.1986) (citation omitted).

The *Morgan* court in effect provided a test which relies on a case-by-case analysis. "Relevant factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." 804 F.2d at 975. No one factor is determinative and "the mere fact that the predicate acts relate to the same overall scheme or involve the same victim does not mean that the acts automatically fail to satisfy the pattern requirement." *Id.* at 975–976.

While the Seventh Circuit does not require separate *schemes* in order to meet the pattern requirement, the decisions do

appear to involve more than a "single *episode* of alleged wrongdoing." *Marks v. Pannell Kerr Forster,* 811 F.2d 1108, 1112 (7th Cir.1987) (Cudahy, Cir. Judge, concurring) (emphasis in original). I must now analyze the facts of the instant case against this backdrop of legal standards.

In its brief in opposition to the motion to dismiss, Pillar acknowledges that the complaint alleges just one fraudulent scheme, "namely to deprive Pillar of Collins' services by presenting false testimony to the *Collins* action court, Ahlbrandt and Enercon performed several independently fraudulent and criminal acts at four hearings over a 3½ month period to effectuate that scheme." Pl.Br. at 11.[1] The complaint alleges that Andreas Ahlbrandt, president of defendant Ahlbrandt, sent a telex to Enercon on June 1, 1983 which contained false statements. The purpose of this telex was to demonstrate to the court that Collins was attempting to interfere with the marketing agreement in effect between Enercon and Ahlbrandt. The complaint goes on to allege that Mr. Ahlbrandt later repeated the content of that telex in an affidavit sent through the mails and which Enercon subsequently submitted to the court. Two months later, Mr. Ahlbrandt sent another letter through the mail which falsely stated that it had disclosed trade secrets to Collins and they would be in danger if Collins disclosed those secrets to Pillar. The purpose of this letter was to restrain Collins from utilizing his product sales skills for Pillar's benefit. The complaint goes on to allege that Mr. Ahlbrandt then sent a telex to Enercon which misrepresented the results of a product test conducted by Ahlbrandt which Collins had witnessed. Allegedly this last telex was used by Enercon to convince the *Collins* court that Collins was willfully attempting to interfere with the Ahlbrandt–Enercon marketing relationship. Pillar goes on to claim that there are two victims who suffered as a result of this activity on the part of Ahlbrandt and Enercon, those being Pillar and Collins himself.

Pillar relies primarily on the case of *Morgan v. Bank of Waukegan,* 804 F.2d 970 (7th Cir.1986) for the proposition that these actions constitute a "pattern of racketeering activity." *Morgan* involved several acts of fraud on the part of the defendants which extended over a period of several years. I believe Pillar's reliance on *Morgan* is misplaced. In this case, Pillar has alleged four fraudulent acts, two involving violations of mail fraud statute and two involving violations of the wire fraud statute extending over a period of three and one-half months. Each of these acts was directed at accomplishing one single purpose, obtaining a preliminary injunction restraining Wayne Collins from working as part of the Pillar sales force. These actions were directed at one victim—Pillar Corporation—to try to gain an advantage for Enercon in the corona treater station market. Pillar's contention that Wayne Collins was also a victim is not specifically alleged in the complaint. From the arguments contained in the parties' briefs, it appears that the *Collins* court action was settled before completion of the preliminary injunction hearing, and that Collins was awarded back pay from Enercon as a part of that settlement. There is no contention in either the pleadings or the briefs that Collins suffered from this action either through legal fees or loss of employment with Pillar.

The predicate acts as alleged in the complaint, even if proven at trial, would do nothing more than show a single episode of wrongdoing. More than a single episode is required to show a pattern of racketeering activity. *Marks,* 811 F.2d at 1112 (Cudahy, Circuit Judge concurring). Because I find that Pillar has failed to allege a pattern of racketeering activity, I need not address Ahlbrandt's remaining arguments. Ahlbrandt's motion to dismiss the federal RICO claims (counts 7, 8 and 9) will be granted and as to these counts, Pillar's complaint will be dismissed. As the same allegations are made against both Ahl-

---

1. The *Collins* action referred to is the case of *Enercon Ind. Corp. v. Wayne N. Collins,* (Case No. 83–CV–1318, Cir.Ct., Waukesha County).

brandt and Enercon, on the court's own motion I will also dismiss the identical counts against Enercon.

■ However I cannot uphold Ahlbrandt's challenge to the claims under Wisconsin's little RICO statute, the Wisconsin Organized Crime Control Act, Wis.Stat. § 946.80 through § 946.87. In addition to the predicate acts alleged above, Pillar has also alleged that Ahlbrandt committed the Wisconsin crimes of false swearing in violation of Wis.Stat. § 946.32 and aiding and abetting perjury in violation of Wis.Stat. §§ 939.05 and 946.31. The complaint goes on to allege that Ahlbrandt has committed at least five acts of racketeering activity as defined by Wis.Stat. § 946.82(4).

The statute states that a pattern of racketeering activity "means engaging in at least three incidents of racketeering activity that have the same or similar intents, results, accomplices, victims or methods of commission or otherwise are interrelated by distinguishing characteristics, ...." Wis.Stat. § 946.82(3). The Wisconsin statute does not have the same requirements as the federal RICO statute for pleading a pattern of racketeering activity.[2] Therefore, I find that Pillar's complaint has adequately alleged a pattern of racketeering activity under Wisconsin's "little RICO" statute.

Ahlbrandt argues that because the racketeering activity, even if true, was not material to the issuance of the TRO by the *Collins* court, the complaint fails to adequately plead the predicate acts under the Wisconsin Statute. I find this argument to be without merit. I must take all reasonable inferences from the facts as alleged in favor of Pillar. It is reasonable to infer that the issuance of the *ex parte* TRO by the *Collins* court was based at least in part on the telex sent by Ahlbrandt to Enercon and submitted to the court at the time of instituting the action. In addition, for Ahlbrandt to have violated the false swearing statute, Wis.Stat. § 946.32(1), it is appar-

ently not necessary that the statement be material. *State v. Devitt*, 82 Wis.2d 262, 274, 262 N.W.2d 73 (1978). Therefore the fact that the affidavit was not sworn to until after the TRO was issued may very well be immaterial to whether or not a violation of the statute occurred. Pillar has adequately alleged the predicate acts as required by Wisconsin's "little RICO" statute.

■ I also find no merit in Ahlbrandt's final argument that the violation of the Wisconsin statute, even if proven, could not have caused injury to Pillar. Pillar has alleged lost sales with particularity, all arising as a result of the action as prosecuted by Enercon and, according to the complaint, in conspiracy with Ahlbrandt. Pillar's allegations of injury are sufficient to withstand a motion to dismiss. Therefore, Ahlbrandt's motion to dismiss the counts arising under the Wisconsin Organized Crime Control Act (counts 10 and 11) will be denied.

### Antitrust Claims

■ Ahlbrandt has moved to dismiss the federal antitrust claims of the complaint (counts 1 and 3) for lack of subject matter jurisdiction. Ahlbrandt's position is that the exercise of jurisdiction by this court will have a deterrent effect on foreign relations and principles of international comity counsel against that exercise of jurisdiction. Ahlbrandt also moves to dismiss state antitrust claims (counts 2 and 4) on the basis that Wisconsin's antitrust statute does not have extraterritorial application to a German corporation for acts done in West Germany, and that the antitrust field has been preempted by federal law.

"Acts and agreements occurring outside the territorial boundaries of the United States that adversely and materially affect American trade are not necessarily immune from United States antitrust laws." *Mannington Mills, Inc. v. Congoleum Corporation*, 595 F.2d 1287, 1291 (3rd Cir.1979).

---

**2.** The same conclusion was reached by a Wisconsin circuit court in *Design Shelters, Inc. v. Pizzeria Enterprises, Inc., et al.*, CCH RICO Business Disputes Guide, ¶ 6862 (Case No. 85–CV–

3260, Cir.Ct. Dane County), the only published Wisconsin case to discuss the pattern requirement of Wis.Stat. § 946.82.

So long as there is an intended effect on American commerce, the United States courts can and have exercised jurisdiction over antitrust activity outside of the United States. *In re Uranium Antitrust Litigation*, 617 F.2d 1248, 1253 (7th Cir.1980). *See also United States v. Aluminum Company of America (Alcoa)*, 148 F.2d 416 (2d Cir.1945) ("Any state may impose liabilities, even upon persons not within its allegiance, for conduct outside its borders that has consequences within its borders which the state reprehends," Judge Lerned Hand's "intended effects" test). Ahlbrandt does not contest the fact that the Sherman Act has extraterritorial application but does argue that principles of international comity weigh against the exercise of jurisdiction by the court in this particular litigation.

Ahlbrandt cites two cases, *Mannington Mills, supra* and *Timberlane Lumber Company v. Bank of America*, 749 F.2d 1378 (9th Cir.1984) in support of its position. In *Mannington*, the court set out several factors which were important in determining whether or not a district court should exercise jurisdiction over a foreign defendant in an action brought pursuant to the Sherman Act. Those factors include: the degree with conflict with foreign law or policies; nationality of parties; relative importance of the alleged violation of conduct here compared to that abroad; etc. *See Mannington Mills*, 595 F.2d at 1297, 1298. In *Timberlane*, the Ninth Circuit repeated what it had previously termed the "jurisdictional rule of reason" to determine if a district court should exercise jurisdiction. The court said that the

> problem [of extraterritorial jurisdiction] should be approached in three parts: does the alleged restraint affect, or was it intended to affect, the foreign commerce of the United States? Is it of such a type and magnitude as to be cognizable as a violation of the Sherman Act? As a matter of international comity and fairness, should the extraterritorial jurisdiction of the United States be asserted to cover it?

749 F.2d at 1382–1383. Ahlbrandt contends that based upon the concerns raised by both the *Mannington* and the *Timberlane* courts, this court should decline to exercise jurisdiction over the Sherman Act claims.

In the *Uranium* antitrust case the court determined that the district court had not abused its discretion by not considering the factors set out in *Mannington Mills* in deciding to exercise jurisdiction over foreign non-national defendants. The court noted that "... The *Mannington Mills* factors are not the law of this circuit." 617 F.2d at 1255. The Seventh Circuit also noted that the *Timberlane* test in effect left the *Alcoa* intended effects test essentially intact. *Id.* at n. 28. However, the Seventh Circuit also noted the difference between the case before it and *Timberlane* and *Mannington Mills*. In the *Uranium Antitrust* suit, the defendants had defaulted. In both other cases, the defendants appeared and contested jurisdiction. Since Ahlbrandt has specially appeared in this case to contest this court's jurisdiction, this case is much closer to *Timberlane* and *Mannington Mills* than the *Uranium Antitrust* suit.

That conclusion, however, does not justify dismissing the antitrust claims in this suit. In both *Timberlane* and *Mannington Mills*, the district court had created a substantial record. To date no record has been compiled in this lawsuit. All that is before me on this motion to dismiss is defense counsel's bare assertions that the exercise of jurisdiction in this case would substantially interfere with the international relations between the United States and West Germany, and that the United States's interest in this litigation is minimal. Ahlbrandt is free to bring to this court's attention those facts which would be pertinent to an analysis of the factors from both *Mannington Mills* and *Timberlane*. However, on the state of the record before me, Ahlbrandt's motion to dismiss the Sherman Act antitrust claims will be denied.

■ Ahlbrandt's motion to dismiss the Wisconsin antitrust claims will also be denied. In *Parker v. Brown*, 317 U.S. 341, 63

S.Ct. 307, 87 L.Ed. 315 (1943), the United States Supreme Court held that the Sherman Act did not preempt a state regulatory scheme and warned against attributing lightly to Congress the intention of preempting state antitrust statutes. In *State v. Allied Chemical and Dye Corporation*, 9 Wis.2d 290, 101 N.W.2d 133 (1960), the Wisconsin Supreme Court specifically found that the federal statutes did not preempt state laws regulating restraints of trade nor precludes states from enacting such laws. The Wisconsin Court also found that there was no conflict between federal and state laws and the state law did not place an unnecessary burden on interstate commerce. Ahlbrandt has not persuaded me that either of these decisions is incorrect. Of course, some of the same principles which may affect this court's exercise of jurisdiction under the Sherman Act, 15 U.S.C. §§ 1 and 2 may also counsel against this court exercising jurisdiction over claims arising under Wisconsin law. For the reasons stated above, I am unable to make such a determination at this juncture.

### Motions for Protective Orders

Subsequent to Ahlbrandt filing its motion to dismiss for lack of jurisdiction, Pillar noticed the deposition of Andreas Ahlbrandt, president of defendant Ahlbrandt, and also noticed the deposition of the partner in charge of the Ahlbrandt account at Quarles & Brady, defense counsel for both Ahlbrandt and Enercon in this action. The purpose of this deposition was to acquire information regarding the contacts of Ahlbrandt with the United States so that it could adequately address the arguments raised in Ahlbrandt's personal jurisdiction motion. As noted above, the parties have reached an agreement that Pillar respond to the personal jurisdiction motion within twenty-one (21) days of either completion of discovery or issuance of an order granting the motion for protective orders. For the reasons stated below, Ahlbrandt's motion for protective orders and to vacate the notices of deposition will be granted in part and denied in part. The motion to quash the subpoena will be granted.

■ The motion for protective orders as to both Ahlbrandt Systems and Quarles & Brady represents just one in a series of disputes between the parties to this action regarding the extent to which discovery may be permitted. Ahlbrandt has challenged the personal jurisdiction of this court over it and has submitted the affidavit of Donald Nimmer contending that Ahlbrandt has no contacts with the state of Wisconsin or even the United States which could support jurisdiction. Ahlbrandt's motion also recites as grounds for the protective order the hardship imposed on it due to the cost involved with producing the documents requested for the deposition, the time involved with Andreas Ahlbrandt travelling from West Germany to Wisconsin for a deposition scheduled December 22, 1986, three days before the Christmas holiday, and the ill health of Andreas Ahlbrandt. The last of the four hardships is evidenced by the affidavit of Mr. Ahlbrandt's physician which states that he would not be able to travel to the United States before June 1987, nor testify before December 1987.

Pillar seeks denial of the protective order on the grounds that Ahlbrandt's counsel has failed to comply with Local Rule 6.02, requiring personal consultation to resolve discovery disputes, and the fact that alternate means of discovery are available, such as deposing Arthur Koch, vice president of Ahlbrandt Systems, rather than Andreas Ahlbrandt. Pillar does not address Ahlbrandt's assertion that the discovery requests to it are made for the purposes of harassment and the creation of undue expense rather than the discovery of relevant evidence going to Ahlbrandt's jurisdictional challenge.

"American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position. Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests." *Societe Nationale Industrielle*

*Aerospatiale v. United States District Court for the Southern District of Iowa,* — U.S. —, 107 S.Ct. 2542, 2557, 96 L.Ed.2d 461 (1987). Pillar has impliedly acknowledged that its original notice of deposition may have indeed been overbroad, and to that extent unnecessary.

However, my review of the complaint, the motions on file, affidavits of counsel and the affidavit of Donald Nimmer convince me that some discovery from Ahlbrandt may indeed be necessary for Pillar to adequately address Ahlbrandt's motion to dismiss for lack of personal jurisdiction. The complaint alleges that Ahlbrandt Systems and Enercon Industries acted in a conspiratorial manner in proceeding with sham lawsuits to injure Pillar in violation of laws of the United States. Some of the actions of Ahlbrandt Systems, or its officers are alleged to have taken place within Wisconsin. Whether in fact this court can exercise personal jurisdiction over Ahlbrandt Systems will be a matter to be determined at a later date, after Pillar has had an opportunity to ascertain all the facts necessary to address that issue.

Pillar's discovery requests should be narrowly tailored so as to impose the least amount of cost on Ahlbrandt. *See Societe Nationale, supra.* Requests for production of documents should be addressed solely to those documents which Pillar does not now have or has not had access to through other sources. Should a deposition of either Andreas Ahlbrandt or Arthur Koch be necessary, such should take place in Germany, unless the parties can mutually agree on a different location.

The matter of plaintiff's counsel's attempt to take discovery of Ahlbrandt's counsel, Quarles & Brady, presents an entirely different question. Although Pillar has provided an opportunity for Quarles & Brady to object to the production of any type of document on the basis of attorney/client privilege or any other ground on a document-by-document basis, I believe that the discovery directed toward Quarles & Brady for purposes of establishing Ahlbrandt's contacts with this forum are inappropriate. Pillar has not directed the court to any authority for the proposition that a client's contacts with its counsel are sufficient to establish personal jurisdiction over that party. In addition, it would appear that Pillar will have access to the information it seeks either from Ahlbrandt itself or from Enercon, who is also represented by Quarles & Brady. Accordingly, the subpoena duces tecum directed to Quarles & Brady will be quashed. If, in the future, Pillar can demonstrate good and sufficient cause why it should be entitled to discovery from defendants' counsel, it may renew its motion, consistent with the requirements of our local rules.

Based upon the foregoing,

IT IS ORDERED that Enercon's motion to dismiss the complaint be and the same is hereby DENIED, and

IT IS FURTHER ORDERED that Ahlbrandt's motion to dismiss the complaint for lack of subject matter jurisdiction or in the alternative, for failure to state a claim upon which relief may be granted, be and the same is hereby GRANTED in part and DENIED in part. Counts 7, 8 and 9 of the complaint are hereby dismissed, and

IT IS FURTHER ORDERED Ahlbrandt's motion for a protective order and to vacate notice of deposition is GRANTED in part and DENIED in part. Pillar's discovery in this case may proceed consistent with this opinion, and

IT IS FURTHER ORDERED that Pillar's motion for an extension of time in which to respond to Ahlbrandt's discovery request be and the same is hereby DENIED as moot, and

IT IS FURTHER ORDERED that Ahlbrandt's motion that the suit be dismissed for lack of personal jurisdiction be and the same is hereby deferred for consideration until Pillar has filed a responsive brief to that motion. That brief should be submitted to the court within twenty-one (21) days after the completion of Pillar's preliminary discovery of Ahlbrandt, and

IT IS FURTHER ORDERED that Ahlbrandt's motion to quash the subpoena duces tecum directed to its counsel, Quarles &

Brady, be and the same is hereby GRANTED.