GENERAL MOTORS CORPORATION,
Plaintiff,

v.

JOHNSON MATTHEY INC., Johnson
Matthey PLC, Johnson Matthey
Ltd., Defendants.

Civ. A. No. 93–C–0931.

United States District Court,
E.D. Wisconsin.

June 15, 1994.

Jon P. Christiansen, Michael B. Brennan, Foley & Lardner, Milwaukee, WI, Chaim T. Kiffel, Lindley J. Brenza, Elli Leibenstein, Kirkland & Ellis, Chicago, IL, Lee A.

Schutzman, General Motors Corp., Detroit, MI, for plaintiff.

Robert H. Friebert, Brian R. Smigelski, Friebert, Finerty & St. John, Milwaukee, WI, Maurice Nessen, Michael Dell, Kramer, Levin, Naftalis, Nessen, Kamin & Frankel, New York City, Robert D. McLean, P. David Richardson, Christopher R. Drahozal, Sidley & Austin, Washington, DC, for defendants.

## DECISION AND ORDER

REYNOLDS, District Judge.

General Motors Corporation ("GM") has sued the Johnson Matthey defendants for breach of contract, common law torts, equitable claims, and violations of the Racketeering Influenced Corrupt Organizations Act ("RICO") and the Wisconsin Organized Crime Control Act ("WOCCA"). The Johnson Matthey defendants have moved to dismiss the entire complaint. The court heard oral argument on the motion to dismiss on June 7, 1994. For the following reasons, the court shall deny the motion to dismiss, and make several orders regarding discovery.

### I. BACKGROUND

For over a decade, GM and Johnson Matthey, Inc. ("JM–USA") have agreed (in three separate multi-year contracts) that GM would purchase a certain percentage of its annual requirements of coated, ceramic, monolithic substrates ("bricks") from JM–USA for use in catalytic converters for its automobiles. JM–USA and Johnson Matthey Ltd. ("JM–Australia") coat those bricks with a solution which includes a tiny amount of precious metal, mainly palladium, rhodium, and platinum, necessary to make the catalytic converter work. For purposes of resolving this motion, suffice it to say that the contracts between the companies provided that GM would furnish JM–USA with the metals and substrates for the coating, and JM–USA would keep track of the amount of GM metals it used to coat GM bricks (with a certain fixed percentage allowed for loss in the process) and send the bricks and reports of metals use to GM's AC–Rochester Division facility in Wisconsin. GM's Australia division also delivered metals and substrates to JM–Australia, which then made and delivered some bricks to GM in Milwaukee. The accounts were to be debited and credited accordingly. (Compl. ¶¶ 10–12, 15, 26, Exs. 1 & 4).

By February of 1990, the relationship between GM and JM–USA had soured, for GM believed that JM–USA had been misappropriating GM's metals by overstating reports of metals coated onto the bricks and understating the metals gains in JM–USA's inventory. (Id. ¶ 21.) GM filed suit in a Michigan federal court. See General Motors Corp. v. Johnson Matthey, Inc., et al., No. 90 CV 70478 DT (E.D.Mich. filed Feb. 21, 1990). The present complaint alleges that the Michigan lawsuit was settled on the condition that GM and JM–USA reach agreement on a new supply contract, and that GM released all claims accrued before January 16, 1991 in exchange for a sum of money. (Compl. ¶¶ 20–26.)

Approximately a year later, GM and JM–USA reached agreement on a new supply contract effective January 1, 1992–1994. (Id., Ex. 4.) JM–USA was to furnish monthly reports to GM to report the "actual metals used." (Id. ¶ 4.4, Ex. 4.4.) The parties now disagree over the definition of "actual metals used." JM–USA says that the definition is explicitly and exclusively set out in the contract in ES–1581, which required JM–USA to use an X-ray fluorescence technique to determine the actual amount of metal applied to a brick. (Id., Ex. 4.4 at 5, ¶ 1.2.) This process, JM–USA says, is not completely accurate, but it is what the parties bargained for. GM says that JM–USA is obligated under the contract to maintain the metals for GM's use and that instead, JM–USA has confiscated them in violation of their contract.

GM alleges that JM–USA and JM–Australia have continued to deliver substantially undercoated bricks and false reports to GM's AC–Rochester Division facility in Wisconsin. (Id. ¶¶ 33–34, 39, 44–45.) GM alleges, and the Johnson Matthey defendants admitted at oral argument, that JM–USA has accumulated extra metals from both GM and other clients, which JM–USA has kept as its own metals gains (gains over and above the allowed loss/yield percentages). (Id. ¶¶ 35–36.)

Further, GM alleges that the metals gained by JM–USA and JM–Australia are not credited to GM (or other customer) accounts but instead are sold to the Johnson Matthey PLC ("JM–Parent") precious metals division. (*Id.* ¶¶ 43, 54, 72.) Finally, GM alleges that the Johnson Matthey defendants' reports indicate no discrepancy from the reported inventory balances and conceal the Johnson Matthey defendants' metals gains. (*Id.* ¶¶ 34, 38–40.) These actions, GM alleges, give rise to the tort, contract, equity, and RICO counts alleged in the complaint. The Johnson Matthey defendants disagree.

## II.  THE MOTION TO DISMISS

The Johnson Matthey defendants have moved to dismiss the claims of fraud and RICO violations for failure to plead fraud with particularity, and for failure to state a claim. They move to dismiss the breach of contract, equity, and additional tort claims for failure to state a claim. The court will address these issues in order.

### A.  Motion to Dismiss Pursuant to Rule 9(b)

■ GM has alleged fraud and predicate acts of mail and wire fraud for its RICO counts. The Johnson Matthey defendants have moved to dismiss these claims under Fed.R.Civ.P. 9(b), which states that plaintiffs who allege fraud in federal court must state the time, place, and content of the alleged fraudulent statement. Rule 9(b) also commands that GM allege some circumstances which suggest that Johnson Matthey has accumulated metals fraudulently. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627–28 (7th Cir.), *cert. denied*, 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990) (securities fraud claim not sufficiently pled when based solely upon a company's rosy projections followed by less favorable predictions.) Absent such particularity, this court must dismiss GM's fraud-based counts. *See Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 993 (7th Cir.1991).

■ The complaint sufficiently alleges that the Johnson Matthey defendants intentionally and knowingly stockpiled "metals gains" and overstated reports of metals use, inducing reliance and producing injury. (*See Id.* ¶¶ 35, 43.) GM's theory of fraud, as expressed at oral argument and easily inferred from the complaint, is that somehow the Johnson Matthey defendants manipulated the testing or reporting of the results of the amount of metal absorbed onto the bricks. (*See* Comp. ¶¶ 32–41.) Therefore, GM alleges, each and every communication that JM–USA and JM–Australia sent to GM, and to every other similarly situated client, fraudulently overstated the amount of precious metal which the two companies had used in order to coat the bricks. Because of this fraud, GM alleges, GM and other Johnson Matthey clients sustained "substantial" losses.

The Johnson Matthey defendants assert two basic arguments regarding particularity: first, that GM has not properly identified the communications which are allegedly fraudulent, and second, that GM has not adequately alleged the circumstances of the fraud. The court rejects the first argument, for given the nature of the allegations—that the entirety of the hundreds of communications made regarding the amount of metals used by JM–USA and JM–Australia in coating the bricks—it would belie the spirit of the Rules to force GM to enumerate each and every communication which it claims was fraudulent. *See Reshal Assoc., Inc. v. Long Grove Trading Co.*, 754 F.Supp. 1226 (N.D.Ill.1990) (strictness with which Rule 9(b) is applied varies according to the nature of the allegation.) The court rejects the second argument as well. The court finds that GM has adequately alleged the circumstances, the perpetrators, and the victims of fraud at this stage of the litigation, and need not go further into fact pleading. *See Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677 (7th Cir.1992).

### B.  Motion to Dismiss Pursuant to Rule 12(b)(6)

■ This court grants a motion to dismiss for failure to state a claim under Fed. R.Civ.P. 12(b)(6) only if it is clear that the plaintiff would not be entitled to relief even if the complaint's factual allegations, and any facts consistent with and reasonably inferred from the pleadings, were true. *Conley v.*

*Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Hrubec v. National,* 981 F.2d 962, 963 (7th Cir.1992); *Gillman v. Burlington N.R. Co.,* 878 F.2d 1020, 1022 (7th Cir.1989). The issue is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### 1. The RICO and WOCCA Claim

Having found that GM has adequately alleged fraud, the court must still examine whether or not the complaint alleges a RICO violation. The Johnson Matthey defendants have challenged the sufficiency of the RICO claim on three grounds, in addition to the 9(b) requirement of particularity for the predicate acts of fraud: (i) failure to plead a pattern of racketeering; (ii) failure to allege the existence of an "enterprise"; and (iii) failure to allege an injury caused by the use or investment of racketeering income in an enterprise.

■ The complaint alleges a decade-long pattern in which the Johnson Matthey defendants have worked in concert to take precious metals unlawfully from Johnson Matthey clients, including GM, through mail and wire fraud, money laundering, and the transportation of stolen goods. The court finds that such allegations sufficiently state a pattern, given the asserted duration, continuation, number of victims, and number of acts and injuries involved. *See H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 240–41, 109 S.Ct. 2893, 2901–02, 106 L.Ed.2d 195 (1989); *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986). The court further finds that GM has adequately alleged distinct "persons" and "enterprises" under Section 1962(c), for a subsidiary corporation is a legal entity distinct from its parent. *Haroco, Inc. v. American Nat'l Bank & Trust Co.,* 747 F.2d 384, 402–403 (7th Cir. 1984), *aff'd on other grounds,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). Finally, the court finds that, even if an "investment injury" is required to bring a civil suit under Section 1962(a)—a determination not yet made by the Seventh Circuit, *see Mid-*

*State Fertilizer Co. v. Exchange Nat'l Bank,* 877 F.2d 1333, 1340 (7th Cir.1989)—GM has sufficiently alleged that the Johnson Matthey defendants took metals belonging to GM and others, sold them to JM–Parent, and used or sold them to someone else, both disguising the metals gains, and injuring GM. The RICO claims shall stand, as shall the WOCCA counts. *See Pillar Corp. v. Enercon Indus. Corp.,* 694 F.Supp. 1353, 1360 (E.D.Wis.1988).

### 2. Breach of Contract, Additional Tort, and Equitable Claims

■ JM–USA has moved to dismiss the breach of contract claim on the grounds that GM has not alleged a breach of any contractual provision because the complaint does not allege that JM–USA failed to conduct XRF tests or failed to make monthly reports—all that JM–USA says is required in the contract. JM–USA's argument relies upon an interpretation of the contract, that the court is unwilling to make at this stage of the litigation. The court finds that GM has alleged a breach of the agreement, which, read in light of the inferences which must be made in deciding a motion to dismiss, supports the allegation that JM–USA did not have a right to the metals gains which it allegedly took.

Finally, the Johnson Matthey defendants have set forth a plethora of arguments against allowing GM to litigate the conversion, breach of fiduciary duty, tortious interference with contract, replevin, civil conspiracy, and equity claims. However, the court rejects these arguments as premature at this time, and shall allow GM to attempt to gather and offer evidence to support its claims.

## III. DISCOVERY MOTIONS

The parties have also filed several discovery motions: (1) GM's April 20, 1994 motion to compel documents; (2) GM's May 7, 1994 motion to overrule objections and order Johnson Matthey defendants to cease interference in third-party production; (3) Johnson Matthey defendants' April 26, 1994 motion to compel and for a protective order; and (4) Johnson Matthey defendants' May 6, 1994 motion for a protective order barring discovery of documents that disclose informa-

tion relating to Johnson Matthey's business relationships with its customers.

A brief summary of the disputes goes as follows: According to GM, Johnson Matthey has refused to provide *any* discovery, contrary to this court's order requiring production of documents by April 18, 1994. Johnson Matthey's primary excuses are that GM did not properly answer the mandatory interrogatories under Local Rule 7.07, and that documents which pertain to third party contractual relationships were potentially irrelevant because of the pending motion to dismiss. Additionally, GM has refused to turn over the results of tests—conducted by an expert in anticipation of litigation, but not testifying at trial—which GM claims confirmed that Johnson Matthey undercoated GM's bricks.

The parties have already agreed upon a protective order for confidentiality, which was entered by this court on February 24, 1994. In light of the denial of the motion to dismiss, the court finds that all discovery should go forward under this order.

It further finds that GM has adequately answered the Local Rule 7.07 (E.D.Wis.) mandatory discovery requests, but reminds both GM and the Johnson Matthey defendants that Rule 7 places a continuing duty to amend seasonably a prior interrogatory response that the party discovers is either true or incomplete after further discovery.

As to Johnson Matthey's motion to protect the tests conducted by a non-testifying expert in preparation for litigation which supposedly gave rise to the allegation that Johnson Matthey undercoated GM's bricks, the court finds that GM shall either turn over these tests to the defendants or else the tests will not be allowed as evidence at trial, and experts who testify at trial shall not be allowed to use the tests as a basis for their testimony.

**IT IS THEREFORE ORDERED** that the Johnson Matthey defendants' motion to dismiss is DENIED.

**IT IS FURTHER ORDERED** that, with regard to discovery:

(1) GM's April 20, 1994 motion to compel is GRANTED.

(2) The Johnson Matthey defendants' April 26, 1994 motion to compel and for a protective order is DENIED in part and GRANTED in part, and GM shall either turn over these tests to the defendants or else the tests will not be allowed as evidence at trial and experts who testify at trial shall not be allowed to use the tests as a basis for their testimony.

(3) The Johnson Matthey defendants' May 6, 1994 motion for a protective order is DENIED;

(4) GM's May 2, 1994 motion to overrule objections is GRANTED, and Johnson Matthey is ordered to cease interference in third-party production.