John POCHIRO and Karen Pochiro, husband and wife, Plaintiffs-Appellants,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant-Appellee.

No. 85–2799.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 1986.

Decided Sept. 9, 1987.

James T. Milliken, Scottsdale, Ariz., for plaintiffs-appellants.

Nancy L. Rowen and William L. Thorpe, Phoenix, Ariz., for defendant-appellee.

Before NORRIS, BEEZER and BRUNETTI, Circuit Judges.

## ORDER

Appellee's petition for rehearing is denied.

The Court's opinion filed on July 14, 1987, is hereby withdrawn.

## OPINION

NORRIS, Circuit Judge:

In January 1983, the Prudential Insurance Company of America (Prudential) sued John Pochiro and his wife, Karen, in Arizona state court, pleading various causes of action based upon allegations that Pochiro appropriated for his own use confidential customer information obtained while Pochiro was an employee of Prudential (the Prudential action). In December 1983, the Pochiros sued Prudential in Arizona state court, pleading various causes of action based upon allegations that Prudential defamed John Pochiro by calling him "a crook" and engaged in other wrongful conduct intended to damage his competing insurance business (the Pochiro action). Prudential removed the Pochiro action to federal district court, and the district court denied the Pochiros' motion to remand.

On August 23, 1985, the Arizona superior court entered a final judgment for Prudential in the Prudential action.[1] On October 8, 1985, the federal district court entered a final judgment dismissing the Pochiros' action as a compulsory counterclaim to Prudential's state court action. The Pochiros raise three issues in this appeal from the judgment of the district court dismissing their action: (1) whether the district court erred in denying their motion to remand to the state court; (2) whether the district court erred in dismissing the claims set out in their original complaint as compulsory counterclaims to the Prudential action; and

(3) whether the district court erred in denying them leave to amend their complaint. We affirm.

## I

The Pochiros make two arguments in support of their claim that the district court should have remanded their action to state court: first, that Prudential's petition for removal was not verified in conformity with the requirements of 28 U.S.C. § 1446(a), and second, that the removal petition was not timely filed. Whether a removal petition satisfies the requirements of section 1446(a) is a question of law reviewable de novo. See Gould v. Mutual Life Ins. Co., 790 F.2d 769, 771 (9th Cir.1986) (removal questions in general reviewed de novo), cert. denied, —— U.S. ——, 107 S.Ct. 580, 93 L.Ed.2d 582 (1986).

■ The Pochiros claim Prudential's removal petition was fatally defective because the mere signature of counsel on the petition did not constitute sufficient verification within the meaning of section 1446(a).[2] We need not decide whether the signature of counsel on the petition satisfies the verification requirement of section 1446(a) because the alleged defect in the removal petition was cured when a formally verified petition was later filed by Prudential. See D.J. McDuffie, Inc. v. Old Reliable Fire Ins. Co., 608 F.2d 145, 146–47 (5th Cir.1979) (permitting amendment to removal petition to add a statement of citizenship of parties), cert. denied, 449 U.S. 830, 101 S.Ct. 97, 66 L.Ed.2d 35 (1980).[3]

■ The Pochiros' argument that the removal petition was untimely is based upon their claim that the petition was filed more than 30 days after a copy of their complaint was delivered to the law firm that was counsel of record for Prudential in Prudential's state court action.[4] This argu-

---

1. On February 5, 1987, the state court judgment in favor of Prudential was affirmed on appeal.

2. Section 1446(a) provides that a removal petition must contain "a short and plain statement of the facts which entitle [the petitioner] to removal" and must be "verified." 28 U.S.C. § 1446(a).

3. Although Congress has not yet eliminated the formal verification requirement for removal pe-

titions, we note that the requirement is something of an anachronism. See 5 C. Wright & A. Miller, Federal Practice and Procedure § 1335 (1969).

4. Under 28 U.S.C. § 1446(b), a "petition for removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the

ment also fails, however, because the Pochiros make no claim that the law firm representing Prudential in its state court action was authorized to accept service of process for Prudential in the Pochiro action. *See Kalakosky v. Collins,* 125 Ariz. 326, 609 P.2d 596, 596–97 (App.1980) (service of a complaint on an attorney ineffective unless attorney has specific authority to accept service); *Sloan v. Florida-Vanderbilt Devel. Corp.,* 22 Ariz.App. 572, 529 P.2d 726, 729 (1974) (same); *see also Ransom v. Brennan,* 437 F.2d 513, 516–19 (5th Cir.) (same), *cert. denied,* 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971); *Schultz v. Schultz,* 436 F.2d 635, 639–40 (7th Cir. 1971) (same).[5] Moreover, the Pochiros do not claim that Prudential otherwise received a copy of their complaint before December 2, 1984, which was the thirtieth day prior to the filing of the petition for removal. Thus, the removal petition was timely.

## II

■ The question whether the Pochiros' claims are compulsory counterclaims which should have been pleaded in the earlier Prudential state court action is a question of state law. *See, e.g., Carnation Co. v. T.U. Parks Constr. Co.,* 816 F.2d 1099, 1099–1102 (6th Cir.1987); *Podhorn v. Paragon Group,* 795 F.2d 658, 661 (8th Cir. 1986); *Chapman v. Aetna Finance Co.,* 615 F.2d 361, 362–64 (5th Cir.1980); *Cleckner v. Republic Van and Storage Co.,* 556 F.2d 766, 768–69 (5th Cir.1977). We review

claim for relief upon which such action or proceeding is based...."

**5.** Since Arizona and federal law are identical on this point, we need not determine whether section 1446(b)'s standard of notice incorporates state or federal definitions of service.

**6.** It is not clear whether the district court dismissed the Pochiro action under Fed.R.Civ.P. 12(b) or Fed.R.Civ.P. 56(b). Regardless, we review de novo dismissals of actions under either rule. *See Fort Vancouver Plywood Co. v. United States,* 747 F.2d 547, 552 (9th Cir.1984) (Rule 12(b)); *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986) (Rule 56(b)); *see also Republic Health Corp. v. Lifemark Hospitals,* 755 F.2d 1453, 1454 (11th Cir.1985) (applying de novo review to dismissal involving Fed.R.Civ.P. 13(a)); *Xerox Corp. v. SCM Corp.,* 576 F.2d 1057, 1058 n. 1 (3d Cir.1978) (same).

de novo district court rulings on questions of state law. *In re McLinn,* 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).[6]

### A

Arizona Rule of Civil Procedure 13(a), which defines a compulsory counterclaim, is identical to Federal Rule of Civil Procedure 13(a): "A pleading shall state as a [compulsory] counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, *if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim....*" Like the federal courts, Arizona applies the liberal "logical relationship" test to determine whether two claims arise out of the same "transaction or occurrence." *See Technical Air Products, Inc. v. Sheridan-Gray, Inc.,* 103 Ariz. 450, 445 P.2d 426, 428 (1968) (adopting the rule of *Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926)); *see also Albright v. Gates,* 362 F.2d 928, 929 (9th Cir.1966) (noting that we have given Rule 13 an "increasingly liberal construction"); 6 C. Wright & A. Miller, Federal Practice & Procedure § 1410, at 40 n. 36 (1971).[7] "This flexible approach to Rule 13 problems attempts to analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem,* 571 F.2d 119, 123 (2d Cir.1978) (applying Fed.R.Civ.P. 13).

**7.** Arizona law on what constitutes a logical relationship is rather sparse. Indeed, the parties spend a great deal of effort debating three Arizona cases which are only marginally on point: *Occidental Chemical Co. v. Connor,* 124 Ariz. 341, 604 P.2d 605 (1979) (en banc); *Patrick v. Associated Drygoods Corp.,* 20 Ariz.App. 6, 509 P.2d 1043 (1973); *Technical Air Products, Inc. v. Sheridan-Gray, Inc.,* 103 Ariz. 450, 445 P.2d 426 (1968). By contrast, the Federal Rules of Civil Procedure, from which the Arizona Rules of Civil Procedure were substantially adopted, *Edwards v. Young,* 107 Ariz. 283, 486 P.2d 181, 182 (1971) (en banc), have received more extensive consideration over the years. The Arizona courts "give great weight" to federal interpretations of the rules, *id.,* and we therefore consider federal law as a strong aid in applying the Arizona law of compulsory counterclaims to this case.

In its state court action, Prudential pleaded causes of action for breach of employment contract, unfair competition, and intentional interference with business relations. The operative facts underlying these causes of action were that John Pochiro, when employed by Prudential as an agent, was given confidential records about Prudential's present and prospective policyholders. Then, after resigning from Prudential, Pochiro failed to return the records to Prudential and instead used them in soliciting business in competition with Prudential.

Prudential argues that the operative facts underlying the Pochiros' action also revolve around the Pochiros' use of these same confidential records. We agree. Although the Pochiros' complaint is rather jumbled, their causes of action for unlawful restraint of trade, unfair business practices, intentional interference with contractual advantage, defamation, abuse of process, intentional infliction of emotional distress, and tortious breach of employment contract are bottomed on a single paragraph of factual allegations, which we quote in full:

> Commencing in December, 1982 and January-February, 1983, Prudential deliberately, maliciously, willfully and/or with gross, wanton and negligent conduct set about to substantially damage John's reputation, credibility and business; that Prudential's wrongful conduct included it doing the following acts: (1) Prudential told John's employees and/or prospective employees that John was a crook, and/or was dishonest and threatened them with litigation involvement or economic difficulty if they worked for John; (2) Prudential told insurance customers that John was a crook, dishonest, and/or unscrupulous and that if they did business with him they would suffer losses; (3) Prudential encouraged one customer to file a complaint, without justification, against John at the Arizona Insurance Commissioner; (4) Prudential used delay tactics in paying its own policyholders to prevent them from converting existing Prudential policies and doing business with John; (5) Prudential unjustifiably tried to pursuade [sic] other insurance companies not to do business with John; (6) Prudential abused the process of the Arizona court system by bringing a lawsuit against John for the ulterior purpose of using it as a tool to dissuade persons from doing business with John; (7) Prudential told customers of John that if they did business with him they would be involved in litigation; (8) Prudential in bad faith delayed and/or failed to make payments to John under John's own insurance policy with Prudential and stopped payment on at least one such check, wrriten [sic] in favor of an ambulance service.

Excerpt of Record (E.R.) at 7–8. Although some of these allegations at first blush appear a bit removed from Prudential's action to enjoin the Pochiros' use of confidential records, it is undisputed that Pochiro's use of Prudential's customer records is inextricably intertwined with the facts as alleged in the Pochiros' complaint. For example, the Pochiros' allegations that Prudential called John Pochiro "a crook" relate to Prudential's litigated claim that Pochiro misappropriated confidential records. Moreover, the Pochiros argue that the district court, rather than dismissing their claims as compulsory counterclaims, should merely have "deferred" adjudication until Prudential's admittedly "threshhold" claims were resolved in state court; but in making this argument, they explicitly acknowledge the close relationship between the two cases:[8]

> The Pochiros believe ... that their claims are not only not logically related to Prudential's claims against them, but properly deferred until the threshhold questions of breach of contract have been considered and decided. *The principles of collateral estoppel and res judicata ... would then limit the issues to be tried in the more complex action, or perhaps*

---

8. The Pochiros' argument for "deferred" adjudication of claims brought in a separate action is distinguishable from the bifurcation of a single trial involving both claims and counterclaims.

*See, e.g., Hospital Building Co. v. Trustees of Rex Hospital,* 86 F.R.D. 694, 700–02 (E.D.N.C.1980) (approving separate trial of compulsory counterclaim).

*eliminate the more complex action entirely. The Pochiros expect that the decision of the court in the first action . . . will have a pervasive practical effect on the second action in any event. [Collateral estoppel and res judicata ]* may, in fact, virtually eliminate their case against Prudential, or so emasculate it that it is not worth the Court's or the parties' time to pursue.

. . . . .

[The Pochiros] might be *disabled from establishing* [restraint of trade], depending upon the result of the first action. Appellants' Opening Brief at 22–23. Thus, apparently misapprehending Rule 13, the Pochiros admit that the judicial resolution of Prudential's claims would have a "pervasive" effect on their claims and might even "eliminate" them entirely, thereby demonstrating that their restraint of trade, unfair business practices, intentional interference with contractual advantage, and tortious breach of employment contract causes of action were indeed compulsory counterclaims to the Prudential action.

█ Similarly, the Pochiros' defamation cause of action must be considered a compulsory counterclaim. As long as the allegedly defamatory statements are sufficiently related to subject matter of the original action, they may be barred as com-pulsory counterclaims. *See Albright,* 362 F.2d at 929 (action for slander is compulsory counterclaim to claim for restitution of price paid for allegedly worthless securities). As noted above, the Pochiros' claim that John was defamed centers around statements allegedly made by Prudential in relation to John's use of Prudential's confidential records. Not only do the facts necessary to prove the two claims substantially overlap, but the collateral estoppel effect of Prudential's victory in the first action would preclude the Pochiros from denying the truth of Prudential's statements. In such a situation, the defamation claim must be considered a compulsory counterclaim to the earlier action. *See, e.g., Linker v. Custom-Bilt Machinery, Inc.,* 594 F.Supp. 894, 899–900 (E.D.Pa.1984) (defamation claim is compulsory counterclaim to securities action); *Sikes v. Rubin Law Offices,* P.C., 102 F.R.D. 259, 260–62 (N.D.Ga.1984) (libel and slander claims are compulsory counterclaims to action to enjoin enforcement of a covenant not to compete); *Appletree v. City of Hartford,* 555 F.Supp. 224, 229–30 (D.Conn.1983) (libel and slander claims are compulsory counterclaims to civil rights action against police officer); *Hospital Bldg. Co. v. Trustees of Rex Hospital,* 86 F.R.D. 694, 697–700 (E.D.N.C.1980) (slander claim is compulsory counterclaim in antitrust action).[9]

---

**9.** The Second Circuit has held that "a counterclaim which stems from the filing of the main action and *subsequent* alleged defamations is not a compulsory counterclaim covered by Rule 13(a)." *Harris v. Steinem,* 571 F.2d 119, 124 (2d Cir.1978); *see also Bose Corp. v. Consumers Union of the United States, Inc.,* 384 F.Supp. 600, 602–03 (D.Mass.1974). The rationale for this rule seems to be that statements made after the filing of the original complaint simply cannot be logically related to the "transaction" which gave rise to the original complaint. This creates an exception to the general rule that an otherwise logically related claim need only have accrued by the time a responsive pleading is filed in the first action, not by the time of the complaint. *See Occidental Chemical Co. v. Connor,* 124 Ariz. 341, 604 P.2d 605, 609 (1979) (en banc). Indeed, *Harris* and the cases it relies upon seem to view any alleged defamation as a separate transaction from the underlying claim. *See, e.g., Fidelity & Casualty Co. v. Coffelt,* 11 F.R.D. 443 (S.D.Iowa 1951) (allegations include precomplaint libel). We do not reach the limited issue actually addressed by *Harris,* however, because the Pochiros have alleged that Prudential made some defamatory statements prior to the filing of the Prudential action. *See Reeves v. Am. Broadcasting Cos.,* 580 F.Supp. 84, 88–89 (S.D.N.Y.) (defamation claim based on statements before complaint filed is compulsory counterclaim), *aff'd,* 719 F.2d 602 (2d Cir.1983). The fact that allegedly defamatory statements may also have been made after the complaint was filed does not change our conclusion. Any additional defamation would have been merely one in a series. *See United Artists Corp. v. Masterpiece Productions,* 221 F.2d 213, 216 (2d Cir.1955) (claim for unfair trade practices which included the filing of a suit is compulsory counterclaim in that suit when the "lawsuit was alleged to be one of a series of harassing maneuvers designed to interfere with defendants' proper exploitation of [contract] rights. . . ."). *Harris* itself did not purport to apply to such a situation. *See Harris,* 571 F.2d at 124 n. 16 (distinguishing *Albright* because *Albright* "did not involve a counterclaim arising only at the time of, and because of, the main suit").

Finally, the Pochiros assert that their abuse of process claim cannot be considered a compulsory counterclaim to the Prudential action. In Arizona, "[t]he gist of the tort of abuse of process is misusing process justified in itself for an end other than that which it was designed to accomplish." *Rondelli v. County of Pima*, 120 Ariz. 483, 586 P.2d 1295, 1301 (1978). The elements of an abuse of process claim are (1) "an ulterior purpose" and (2) "a wilful act in the use of the process not in the regular conduct of the proceeding." *Id.* Thus, a claim for abuse of process under Arizona law does not require that the prior dispute be resolved in favor of the abuse of process claimant, only that the opposing party has attempted to pervert the judicial process to an improper purpose.[10]

In this case, to prove "abuse of process" arising out of the Prudential action, the Pochiros would have to demonstrate that Prudential had a wrongful purpose in pursuing its action. Certainly the presence of a legitimate justification for that action—suing to enjoin the Pochiros from unfairly competing with Prudential—would greatly influence the determination of whether Prudential's purpose was wrongful. Thus, the similarity of the facts necessary for the determination of both actions reveals that Prudential's substantive claims and the Pochiros' abuse of process claim are "offshoots of the same basic controversy between the parties." *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir.1961).

■ We recognize that despite a similar overlap in most abuse of process cases, the courts have split on the question whether an abuse of process claim is a compulsory counterclaim in the very action which allegedly is abusive. *Compare Carteret Savings & Loan Assoc. v. Jackson*, 812 F.2d 36, 38–39 (1st Cir.1987) (compulsory counterclaim); *Podhorn*, 795 F.2d at 660–61

(same); *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d at 633–34 (same); *Miami Herald Publishing Co. v. Ferre*, 636 F.Supp. 970, 972–73 (S.D.Fla.1985) (same); *Linker*, 594 F.Supp. at 899–90 (same); *Hospital Bldg. Co.*, 86 F.R.D. at 697–700 (same), *with Cochrane v. Iowa Beef Processors, Inc.*, 596 F.2d 254, 262–64 (8th Cir.) (not a compulsory counterclaim), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979); *Anderson v. Central Point School Dist. No. 6*, 554 F.Supp. 600, 604–05 (D.Or.1982) (same), *aff'd in part, rev'd in part*, 746 F.2d 505 (9th Cir.1984); *North Carolina Electric Membership Corp. v. Carolina Power & Light Co.*, 85 F.R.D. 249, 251–54 (M.D.N.C.1979) (same); *Bose Corp. v. Consumers Union of the United States, Inc.*, 384 F.Supp. 600, 603 (D.Mass.1974) (same). Because we believe that the liberal reading of the "transaction or occurrence" standard is more in keeping with the pronouncements of the Supreme Court, we now reject the line of cases that has refused to find an abuse of process claim a compulsory counterclaim.

As early as 1926, the Supreme Court admonished the courts that the "transaction or occurrence" standard was to be read broadly. *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926) (discussing Equity Rule 30, from which Rule 13 was adapted). More recently, the Court reemphasized this point, stating, "Under Rule 13(a)'s predecessor this Court held that 'transaction' is a word of flexible meaning which may comprehend a series of occurrences if they have logical connection, *Moore v. New York Cotton Exchange*, 270 U.S. 593 [46 S.Ct. 367], and this is the rule generally followed by the lower courts in construing Rule 13(a), *e.g., Great Lakes, supra; United Artists Corp. v. Masterpiece Productions*, 221 F.2d 213, 216." *Baker v. Gold*

---

10. An abuse of process claim in the state of Arizona may therefore be distinguished from a claim for malicious prosecution which does require a termination of the prior action favorable to the claimant. *See Bird v. Rothman*, 128 Ariz. 599, 627 P.2d 1097, 1100 (App.) (analyzing the merits of separate claims for abuse of process and malicious prosecution), *cert. denied*, 454 U.S. 865, 102 S.Ct. 327, 70 L.Ed.2d 166 (1981).

We also find inapposite *Patrick v. Associated Drygoods Corp.*, 20 Ariz.App. 6, 509 P.2d 1043 (1973), which deals solely with the narrow question whether a wrongful garnishment claim based on the alleged falsity of the garnishment affidavit is a compulsory counterclaim.

*Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974). We find instructive the two cases cited with approval by the Court for their liberal construction of Rule 13. *Great Lakes* raised the question whether an abuse of process claim and an unfair competition claim were logically related. The Third Circuit found the relationship "unquestionable." *Great Lakes,* 286 F.2d at 634. Moreover, *United Artists* found various "harassing manuevers," including the filing of the lawsuit, to be compulsory counterclaims to an action for alleged copyright infringement. 221 F.2d at 216. In light of the Supreme Court's approval of these holdings, we must disagree with those courts which have found abuse of process claims to be unrelated to the underlying substantive claims. As mentioned above, even though the merits of the substantive claim are not controlling on the question of abuse of process, they are necessarily significant in the assessment of possible ulterior motive. We therefore hold that the Pochiros' abuse of process claim is a compulsory counterclaim to the Prudential action.[11]

**B**

■ Having determined that the Pochiros' claims in this action are compulsory counterclaims to the earlier Prudential action, we now examine whether those claims were properly barred by the district court in this case. Several circuits have held that state law governs the preclusive effect of the failure to raise a compulsory counterclaim in an earlier state court action. *See, e.g., Carnation Co. v. T.U. Parks Constr. Co.,* 816 F.2d at 1099–1102; *Podhorn,* 795 F.2d at 661; *Cleckner,* 556 F.2d at 768–69; *see also Chapman v. Aetna Finance Co.,*

615 F.2d at 363–64 (applying state rule as a matter of "comity"). Although this court has not yet reached this specific issue, we have ruled more generally that under the full faith and credit statute, 28 U.S.C. § 1738, we apply state law to determine the res judicata effect of a state court judgment on a state law issue. *Eichman v. Fotomat Corp.,* 759 F.2d 1434, 1439 (9th Cir.1985). Under Arizona law, once an action reaches final judgment, the failure to plead a compulsory counterclaim in that action is res judicata in a later independent action on the compulsory counterclaims. *Occidental Chemical Co. v. Connor,* 124 Ariz. 341, 604 P.2d 605, 609 (1979) (en banc).[12] Thus, we here consider whether the district court correctly applied the Arizona law of res judicata.

In Arizona, res judicata effect is given to final judgments of a trial court; "an appeal from a judgment does not suspend the effect of the judgment as res judicata between the parties." *Arizona Downs v. Superior Court,* 128 Ariz. 73, 623 P.2d 1229, 1232 (1981). Thus, the judgment in the Prudential action became res judicata between the parties when it was entered on August 23, 1985. The Pochiros argue, however, that when the district court orally dismissed their action on June 10, 1985, the judgment in the Prudential action had not yet been entered. Be that as it may, we do not now review the district court's June 10 ruling. The court reconsidered its June 10 oral ruling pursuant to the Pochiros' June 18 motion for reconsideration and entered a final judgment dismissing the Pochiros' action on October 8, 1985. By that time, the Prudential judgment already had been entered. Since, under Arizona law the appeal from the Prudential judgment had no im-

---

**11.** Because we have found the rest of the Pochiros' claims to be compulsory counterclaims, *a fortiori,* their claim for intentional infliction of emotional distress, which is based on the exact same allegations, is also a compulsory counterclaim.

The Pochiros also argue their claims cannot be compulsory counterclaims because they have alleged actions on Prudential's part as late as February 1983. They assert that claims arising from actions after their answer was filed in state court on February 11 cannot be considered compulsory counterclaims. Neither in their

827 F.2d—28

amended complaint nor in their briefs or oral argument before this court have the Pochiros pointed to a single act which took place after February 11. Thus, their contention is meritless.

**12.** Waiver and estoppel doctrines also may influence the preclusive effect of the failure to assert a compulsory counterclaim. *See, e.g., Fletcher v. State ex rel. Morrison,* 90 Ariz. 251, 367 P.2d 272, 274 (1961); *Harris,* 571 F.2d at 122 n. 5; *see also* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1417 (1971).

pact on its preclusive effect, the district court correctly ruled it was res judicata in this case.

## III

Finally, the Pochiros argue that the district court erred in failing to permit them to amend their complaint. Denial of leave to amend a complaint generally is reviewed for abuse of discretion, *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 765 (9th Cir.1986), but a dismissal should not be affirmed unless it is clear that the complaint could not be saved by amendment. *See Kelson v. City of Springfield*, 767 F.2d 651, 656 (9th Cir. 1985) (complaint erroneously dismissed for failure to state a claim where complaint could have been saved by amendment).

Although the Pochiros' argument against dismissal without leave to amend is based entirely on their proposed amended complaint, they admit, "The proposed amended complaint (E[xcerpts of Record at] 149–153) *is substantially the same as the complaint, except that the background references to the contract between the parties were eliminated,* in order to make it clear that the second action does not rest upon the contract which formed the basis for the action." Appellants' Opening Brief at 24. The mere elimination of background references to John Pochiro's employment contract with Prudential does not alter the substance of his claims or the relationship of those claims to Prudential's state court action. Because the proposed changes to the complaint are completely superficial, we hold that the district court did not abuse its discretion in denying leave to amend.

## CONCLUSION

We hold that all claims brought by the Pochiros in this action are barred as compulsory counterclaims to the Prudential action.[13]

---

13. Appellants' appeal is not so frivolous or vexatious as to merit an award of fees. Appellee's

The judgment of the district court is *AFFIRMED*.

motion for attorneys' fees is denied.