884 F.2d 504
 1989-2 Trade Cases 68,745
 LES SHOCKLEY RACING, INC.; Les Shockley; Robert W.
Correll; Gary G. Cerveny; Douglas J. Malewicki;
Aero-Visions, Inc.; Gary M. Krolczyk; Larry C. Parks;
Dorothy M. McClure, Plaintiffs-Appellants,
v.
NATIONAL HOT ROD ASSOCIATION; K & K Insurance Agency, Inc.,
Defendants-Appellees.
LES SHOCKLEY RACING, INC.; Les Shockley; Robert W.
Correll; Gary G. Cerveny; Douglas J. Malewicki;
Aero-Visions, Inc.; Gary M. Krolczyk; Larry C. Parks;
Dorothy M. McClure, Plaintiffs-Appellees,
v.
NATIONAL HOT ROD ASSOCIATION, Defendant-Appellant,
and
K & K Insurance Agency, Inc., Defendant.
 Nos. 88-5748, 88-5789.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 8, 1989.
Decided Sept. 6, 1989.
 
 Ellen A. Pansky, Bayne & Markle, Van Nuys, Cal., for plaintiffs-appellants-cross-appellees.
 David A. Pash, Kinsella, Boesch, Fujikawa & Towle, Los Angeles, Cal., for defendants-appellees-cross-appellants.
 Appeals from the United States District Court for the Central District of California.
 Before HUG, HALL and WIGGINS, Circuit Judges.
 HUG, Circuit Judge:
 
 
 1
 Plaintiffs are owners and operators of jet-powered trucks and jet-powered motorcycles, which allegedly have been banned from exhibition racing (racing without prize money) at drag racing events sponsored and controlled by the National Hot Rod Association ("NHRA"). Plaintiffs sued the NHRA and its insurance broker, K & K Insurance Agency, Inc. ("K & K"), alleging that the ban resulted from a conspiracy among the NHRA, K & K, and unnamed NHRA members who own or operate drag racing tracks throughout the United States. Plaintiffs appeal the order dismissing their claim under Sherman Act Sec. 1, 15 U.S.C. Sec. 1 (1982), for failure adequately to state a claim for relief and their pendent state law claims for lack of subject matter jurisdiction. The NHRA cross-appeals the order denying its motion for sanctions against plaintiffs under Fed.R.Civ.P. 11.
 
 
 2
 Plaintiffs' appeal requires us to decide whether they adequately alleged injury to competition and whether the district court abused its discretion in declining to exercise jurisdiction over the pendent claims. The NHRA's cross-appeal requires us to decide whether plaintiffs' complaint, considered in its entirety, was frivolous within the meaning of Fed.R.Civ.P. 11. We resolve each of these issues in the negative and affirm both orders of the district court.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 3
 In their original complaint, plaintiffs sought damages and injunctive relief for alleged violations of both sections one and two of the Sherman Act, 15 U.S.C. Secs. 1, 2 (1982), and for a variety of alleged state law torts. The district court dismissed this complaint but granted plaintiffs leave to amend. The court based its dismissal of the Sherman Act Sec. 1 claim on the absence of sufficiently alleged facts showing injury to competition. The court described the complaint as devoid of allegations that competition suffered injury "aside from the [allegation] that plaintiff[s] ... [were] precluded from the market."
 
 
 4
 In amending their complaint, plaintiffs dropped the Sherman Act Sec. 2 claims but retained the Sherman Act Sec. 1 claim and the pendent state law claims. Only the facts alleged in support of the section one claim together with all reasonable inferences that are favorable to the plaintiffs need now concern us. Plaintiffs allege they are in the business of staging exhibition drag races of their jet-powered trucks and motorcycles at race tracks throughout the United States where drag racing events are held. Plaintiffs conduct their business by selling their exhibition drag racing services to the owners and operators of these race tracks for presentation at specific racing events. A majority of the race tracks where plaintiffs could exhibit their jet-powered vehicles are owned or operated by members of the NHRA. The NHRA, both directly and through K & K and other agents, controls the purchase of exhibition drag racing services at the race tracks owned and operated by its members. The NHRA is the largest sanctioning organization of drag racing events in the United States.
 
 
 5
 Plaintiffs also allege that the NHRA has never licensed jet-powered motorcycles nor permitted their exhibition at NHRA-sanctioned events. For several years preceding 1987, however, the NHRA permitted plaintiffs to operate their jet-powered trucks during NHRA-sanctioned events at speeds up to 175 m.p.h. This permission was modified in January 1987 when the NHRA and K & K banned the exhibition of jet-powered trucks at speeds greater than 55 m.p.h. Thereafter, NHRA member track owners and operators refused to purchase plaintiffs' exhibition drag racing services because operation of jet-powered trucks at or below 55 m.p.h. lacked sufficient spectator appeal. Following 1987, the NHRA banned the exhibition of jet-powered trucks at any speed.
 
 
 6
 Based on these allegations in the amended complaint, plaintiffs repeated their claim that the NHRA, K & K, and NHRA members who own or operate race tracks conspired or agreed to restrain trade unreasonably in violation of Sherman Act Sec. 1. The district court again dismissed the section one claim on the ground that plaintiffs had failed adequately to plead an injury to competition that exceeded mere injury to themselves. The court also declined to exercise pendent jurisdiction over the remaining state law tort claims and ordered the entire complaint dismissed without leave to amend. Finally, the district court denied the NHRA's motion to sanction plaintiffs pursuant to Fed.R.Civ.P. 11 for their filing of the amended complaint. We have jurisdiction to review both orders of the district court under 28 U.S.C. Sec. 1291 (1982).
 
 DISCUSSION
 I. Sherman Act Sec. 1 Claim
 
 7
 We review de novo the dismissal of plaintiffs' Sherman Act Sec. 1 claim under Fed.R.Civ.P. 12(b)(6). Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 732 (9th Cir.1987). Plaintiffs are entitled to have all of their allegations of material fact accepted as true and construed in a favorable light. Western Reserve Oil & Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir.1985), cert. denied, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 773 (1986). We may affirm the dismissal only if proof of no set of facts outlined by the complaint would justify relief. Rutman Wine, 829 F.2d at 732.
 
 
 8
 The parties do not dispute that the rule of reason controls this case. The rule of reason requires a claimant under Sherman Act Sec. 1 initially to establish three elements: "(1) an agreement or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intend to harm or restrain competition; and (3) which actually injures competition." Oltz v. St. Peter's Community Hosp., 861 F.2d 1440, 1445 (9th Cir.1988) (citations omitted). After the claimant has established these elements, the factfinder must weigh the anticompetitive effects and the procompetitive effects or business justifications advanced for the challenged restraint to determine whether it is unreasonable. Id. This examination must include a thorough examination into all of the circumstances surrounding the restraint.
 
 
 9
 The district court dismissed plaintiffs' Sherman Act Sec. 1 claim for failure sufficiently to allege an unreasonable restraint of or injury to competition. In order successfully to allege injury to competition, a section one claimant may not merely recite the bare legal conclusion that competition has been restrained unreasonably. Rather, a claimant must, at a minimum, sketch the outline of the antitrust violation with allegations of supporting factual detail. Rutman Wine, 829 F.2d at 736.
 
 
 10
 Ordinarily, the factual support needed to show injury to competition must include proof of the relevant geographic and product markets and demonstration of the restraint's anticompetitive effects within those markets. Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc., 875 F.2d 1369 (9th Cir.1989). Avoiding such market analysis requires proof of actual detrimental competitive effects such as output decreases or price increases. Id. Because plaintiffs failed to allege any actual detrimental competitive effects from the challenged restraint, they had to allege injury to competition within a framework of market analysis.
 
 
 11
 Plaintiffs' complaint describes the relevant market as the market for "exhibition drag racing services." In this market, plaintiffs maintain they compete with all others who own and operate jet-powered vehicles for sales of services to racetrack owners and operators who sponsor events at which spectators pay to observe drag racing. The United States appears to be the geographical dimension of the suggested market, and the staging of exhibition drag races between all varieties of jet-powered vehicles constitutes the product dimension of the market. Plaintiffs allege that defendants, as buyers of exhibition drag racing services, collectively possess a degree of monopsony power--power to affect the price and amount of the services exchanged in the relevant market. Defendants allegedly derive this power because NHRA members own or operate a majority of the tracks where exhibition drag racing is possible and because the NHRA controls its members' purchases of exhibition drag racing services. Because of this collective buying power, plaintiffs allege that the NHRA's ban on jet-powered truck and motorcycle exhibition at NHRA-sanctioned events has effectively blocked their access to the relevant market.
 
 
 12
 Plaintiffs insist that their allegation of market exclusion and resulting loss of income are sufficient to plead an outline of facts showing injury to competition that would enable a factfinder to conclude that defendants violated Sherman Act Sec. 1. We cannot agree. Although proof of plaintiffs' allegations would establish harm to their business interests, such proof would not, standing alone, show injury to competition in the market as a whole.
 
 
 13
 Plaintiffs correctly argue that removal of one or more competing sellers from any market necessarily has an effect on competitive conditions within that market. But removal of one or a few competitors need not equate with injury to competition. "Every agreement concerning trade, every regulation of trade, restrains. To bind, to restrain, is of their very essence." Board of Trade v. United States, 246 U.S. 231, 238, 38 S.Ct. 242, 244, 62 L.Ed. 683 (1918). Only when the restraining force of an agreement or other arrangement affecting trade becomes unreasonably disruptive of market functions such as price setting, resource allocation, market entry, or output designation is a violation of the Sherman Act threatened. See NCAA v. Board of Regents, 468 U.S. 85, 98, 104 S.Ct. 2948, 2958, 82 L.Ed.2d 70 (1984). This limitation on the reach of the Sherman Act is reflected in our repeated injunctions that section one claimants must plead and prove a reduction of competition in the market in general and not mere injury to their own positions as competitors in the market. See, e.g., McGlinchy v. Shell Chem. Co., 845 F.2d 802, 811-12 (9th Cir.1988); Rutman Wine, 829 F.2d at 734; Calculators Haw., Inc. v. Brandt, Inc., 724 F.2d 1332, 1338 (9th Cir.1983); Aydin Corp. v. Loral Corp., 718 F.2d 897, 902 (9th Cir.1983); Cascade Cabinet Co. v. Western Cabinet & Millwork, Inc., 710 F.2d 1366, 1373 (9th Cir.1983).
 
 
 14
 Of course, convergence of injury to a market competitor and injury to competition is possible when the relevant market is both narrow and discrete and the market participants are few. See, e.g., Oltz, 861 F.2d at 1440 (exclusion of a single nurse anesthetist was tantamount to a reduction in competition where a single hospital's service area was the relevant geographic market and the exclusion reduced the number of competing anesthesia service providers from five to four). But none of the factual allegations in plaintiffs' complaint suggests a market in which the removal of the eight plaintiffs from the pool of competing sellers would adversely and unreasonably affect overall competitive conditions. Instead, plaintiffs' complaint is disturbingly silent about the effect of their removal on the owners and operators of various types of jet-powered vehicles still vying for business in the market for exhibition drag racing services. Absent are factual allegations outlining the effect of the NHRA's ban on the price or availability of exhibition drag racing services in the United States; the allocation of work hours, vehicle parts, and other resources crucial to the provision of those services; the availability of opportunity for entry into the market through the use of jet-powered vehicles other than trucks or motorcycles; or any other characteristic or function of a competitive market. As a result, plaintiffs have failed to state a claim under Sherman Act Sec. 1 that would justify any measure of relief. The district court properly granted dismissal of that claim.[1]
 
 II. Pendent State Law Claims
 
 15
 Plaintiffs also request that we reverse the dismissal of their state law tort claims. Plaintiffs have no basis for their request, however, because the Sherman Act claim was the sole federal claim in this lawsuit. A district court's exercise of pendent jurisdiction over state law claims arising from the same set of operative facts that supports a federal claim is a matter of discretion. Mackey v. Pioneer Nat'l Bank, 867 F.2d 520, 523 (9th Cir.1989). When, as here, the court dismisses the federal claim leaving only state claims for resolution, the court should decline jurisdiction over the state claims and dismiss them without prejudice. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 108 S.Ct. 614, 618-19, 98 L.Ed.2d 720 (1988). Having dismissed the Sherman Act claim, the district court appropriately exercised its discretion by declining pendent jurisdiction over the remaining state claims.
 
 III. Rule 11 Sanctions
 
 16
 The NHRA seeks a reversal of the district court's order denying the motion to sanction plaintiffs under Fed.R.Civ.P. 11 for their filing of the amended complaint. The NHRA contends that the amended complaint is frivolous because counsel for plaintiffs failed to cure the very defects in the allegations about injury to competition that precipitated dismissal of the Sherman Act Sec. 1 claim in the original complaint. According to the NHRA, such conduct falls below the standard set by Rule 11 and should result in sanctions because sanctions are mandatory when a violation of the rule occurs. See Golden Eagle Distrib. Corp. v. Burroughs Corp., 801 F.2d 1531, 1538 (9th Cir.1986). We review de novo the district court's order denying the NHRA's motion for sanctions. Id.
 
 
 17
 Contrary to the NHRA's suggestion, we are not free to concentrate our inquiry under Rule 11 solely on the defective allegation regarding injury to competition. Rule 11 sanctions are inappropriate unless the pleading, motion, or other paper is frivolous when considered as a whole. Community Elec. Serv. v. National Elec. Contractors Ass'n, Inc., 869 F.2d 1235, 1242 (9th Cir.1989). The mere presence of a deficient or even frivolous allegation does not necessarily violate the rule. Murphy v. Business Cards Tomorrow, Inc., 854 F.2d 1202, 1205 (9th Cir.1988). A pleading, motion, or other paper is frivolous within the meaning of Rule 11 if, at the time of filing, a competent attorney after a reasonable investigation could not have determined that a well-founded basis in fact and in law or a good faith argument for extension of law supported the filing. Zaldivar v. City of Los Angeles, 780 F.2d 823, 830 (9th Cir.1986). Viewing plaintiffs' inadequate allegation of injury to competition in the context of their entire Sherman Act Sec. 1 claim, we conclude that the amended complaint satisfies the standard of Rule 11.
 
 
 18
 The potential for violating the antitrust laws through a concerted refusal to deal with market participants is well established in antitrust law. See, e.g., Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959). Plaintiffs' Sherman Act Sec. 1 claim shares some of the features common to such a claim. Reduced to its essence, plaintiffs' theory is that a group of buyers with power in the relevant market banned the two types of vehicles used by plaintiffs, precluding plaintiffs from meaningful participation in the market. Plaintiffs' theory deviates from the paradigm of an unlawful concerted refusal to deal because none of the alleged conspirators was in direct competition with any of the class of excluded sellers. Plaintiffs' theory is also unusual because it relies on the consolidation of market power in the buyers rather than in the sellers. But neither of these unique characteristics would itself preclude recovery. Sherman Act Sec. 1 can apply even though none of the conspirators is in direct competition with the market participants who are harmed by the conspiracy. See Paramount Famous Lasky Corp. v. United States, 282 U.S. 30, 51 S.Ct. 42, 75 L.Ed. 145 (1930) (conspiracy by film distributors to force film exhibitors into submitting to arbitration agreements). Moreover, the Sherman Act is implicated by both monopolistic and monopsonistic market concentrations. Cf., American Tobacco Co. v. United States, 328 U.S. 781, 801-02, 66 S.Ct. 1125, 1135, 90 L.Ed. 1575 (1946) (tobacco companies' power as buyers in the tobacco supply market used to find antitrust violations). Plaintiffs' theory of antitrust liability, although unusual, is not completely devoid of merit. Thus, the district court properly concluded that the amended complaint, as a whole, satisfies the standard of Rule 11.
 
 CONCLUSION
 
 19
 We affirm the order dismissing plaintiffs' amended complaint. Plaintiffs failed to state a claim under Sherman Act Sec. 1 by inadequately pleading injury to competition in the market as a whole. Because that claim was the only federal claim, the district court appropriately exercised its discretion in declining pendent jurisdiction over the state law claims. We also affirm the order denying the NHRA's motion to sanction plaintiffs under Fed.R.Civ.P. 11, because, considered in its entirety, plaintiffs' amended complaint cannot be regarded as frivolous.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 Plaintiffs insist that our inquiry into dismissal of the Sherman Act Sec. 1 claim should focus on the five factor test for antitrust standing outlined by the Supreme Court in Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters, 459 U.S. 519, 545, 103 S.Ct. 897, 912, 74 L.Ed.2d 723 (1983). The focus of the standing inquiry is whether a particular plaintiff is a proper party to seek redress under Clayton Act Sec. 4, 15 U.S.C. Sec. 15(a) (1982), for a violation of the antitrust laws. Exhibitors' Serv., Inc. v. American Multi-Cinema, Inc., 788 F.2d 574, 577-78 (9th Cir.1986). However, whether plaintiffs would meet the five-factor standing test of Associated Gen. Contractors is irrelevant to this appeal. By holding that injury to competition was inadequately pleaded, the district court determined that no violation of the antitrust laws was stated. Thus, no party could sue on the basis of the allegations in the amended complaint