TIGARD ELECTRIC, INC.,
et al., Plaintiffs,

v.

NATIONAL ELECTRICAL CON-
TRACTORS ASSOCIATION,
et al., Defendants.

NATIONAL ELECTRICAL CON-
TRACTORS ASSOCIATION,
Counterclaim Plaintiff,

v.

ASSOCIATED BUILDERS AND CON-
TRACTORS, INC., Counterclaim
Defendant.

Civ. No. 91–436–JE.

United States District Court,
D. Oregon.

Feb. 19, 1992.

---

**1500**

Thomas M. Triplett, Schwabe, Williamson & Wyatt, Portland, Or., and Maurice Baskin and Edward F. Glynn, Jr., Venable, Baetjer, Howard & Civiletti, Washington, D.C., for plaintiffs.

Jack L. Kennedy, Susan E. Watts, Kennedy, King & Zimmer, Portland, Or., and John A. McGuinn, Gary L. Lieber, Paul Monroe Heylman, Karen S. Russell and Henry A. Platt, Schmeltzer, Aptaker &

Shepard, P.C., Washington, D.C., for defendant Nat. Elec. Contractors Ass'n, Inc.

Wayne Hilliard and Milo Petranovich, Lane, Powell, Spears & Lubersky, Portland, Or., for defendants Oregon–NECA, Atlas Elec. and Oregon Elec.

Paul C. Hays and James W. Kasameyer, Carney, Buckley, Kasameyer & Hays, Portland, Or., for defendant Intern. Broth. of Elec. Workers Local 48.

## ORDER

FRYE, District Judge:

■ The Honorable John Jelderks, United States Magistrate Judge, filed Findings and Recommendation on December 27, 1991. The plaintiffs filed timely objections to the Findings and Recommendation. When either party objects to any portion of a magistrate's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the magistrate's report. 28 U.S.C. § 636(b)(1); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.*, 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied*, 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982). The matter is before this court pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b).

This court has, therefore, given *de novo* review of the rulings of Magistrate Judge Jelderks. This court ADOPTS the Findings and Recommendation of Magistrate Judge Jelderks dated December 27, 1991 in its entirety.

IT IS HEREBY ORDERED that defendants' motions to dismiss the first claim (# 33 and # 40) are GRANTED. The motion of plaintiff Associated Builders and Contractors, Inc. for dismissal or summary judgment on the counterclaims of National Electrical Contractors Association (# 45) is DENIED.

## FINDINGS AND RECOMMENDATION

JELDERKS, United States Magistrate Judge:

Plaintiffs Associated Builders and Contractors, Inc. (ABC), Tigard Electric, Inc.

(Tigard), Phoenix Electric Company (Phoenix), and New Tech Electric (New Tech) bring this antitrust action against defendants National Electrical Contractors Association (National NECA), the Oregon–Columbia Chapter of NECA (Oregon NECA), Atlas Electrical Contractors, Inc. (Atlas), Oregon Electrical Construction, Inc. (Oregon Electric) and Local 48 of the International Brotherhood of Electrical Workers (Local 48). Defendants move to dismiss plaintiffs' first claim for relief. Plaintiffs seek an order dismissing or granting them summary judgment on NECA's first counterclaim. I recommend granting defendants' motion to dismiss, and denying plaintiffs' motion for dismissal or summary judgment.

## BACKGROUND

Plaintiff ABC is a trade association whose members are engaged in the construction industry. Plaintiffs Tigard, Phoenix, and New Tech are ABC members and are non-union electrical construction companies operating in Oregon.

Defendant National NECA, a trade association of electrical contractors, negotiates and administers collective bargaining agreements on behalf of electrical contractors with local IBEW unions. Oregon NECA, a local chapter of National NECA, has an ongoing collective bargaining relationship with Local 48. Atlas and Oregon Electric are members of Oregon NECA.

In this action, plaintiffs challenge Local 48's "Market Recovery Program," otherwise referred to as the Oregon Job Targeting Program (OJTP). Under the OJTP, unions use various methods to improve the labor prospects of their members. Under one of these methods, union members contribute a percentage of their dues to a fund used to subsidize employers using union labor on certain targeted projects. The unions subsidize employers by announcing to all bidders who have collective bargaining agreements with the unions that the job targeting fund will be used to partially subsidize the standard hourly wages set out in multi-employer bargaining units or associations. In other job targeting programs, the fund may reimburse the employer for a portion of the union scale wages after the employer pays the employees at the collectively-bargained rate.

Plaintiffs contend that the job targeting program constitutes a conspiracy to prevent contractors that do not belong to NECA from obtaining construction contracts. They allege that members of Oregon NECA requesting subsidies identify projects on which they are about to bid, identify non-union contractors expected to bid, and specify the number of hours of electrical work to be performed. Plaintiffs allege that, through the OJTP, defendants have "exchanged information ... regarding the nature of competition expected on particular projects, the estimated number of hours which the project is expected to require for completion and other competitively sensitive information relevant to determining the price that the members of Oregon NECA will bid on the project." Plaintiffs allege that, because of this sharing of information, ABC members "have been and continue to be excluded from competing effectively on those electrical construction projects within the District of Oregon that are selected for job targeting by defendants, and have suffered injury to their business or property" within the meaning of the Clayton Antitrust Act. They add that, because of the OJTP, members of Oregon NECA have bid successfully on more than 70% of the electrical construction projects in the Portland area.

In their first claim for relief, plaintiffs allege that defendants have formed a combination in restraint of trade in violation of Section 1 of the Sherman Act. Defendants seek dismissal of that claim. In their second claim, which is not the subject of pending motions, plaintiffs assert that defendants have conspired to monopolize the electrical construction business in Portland in violation of Section 2 of that Act. They seek injunctive relief, and recovery of treble damages under Section 4 of the Clayton Act, 15 U.S.C. § 15, attorney fees, and costs.

National NECA's answer includes two counterclaims for defamation against ABC.

The first counterclaim alleges that ABC issued a defamatory press release concerning this action on May 14, 1991, in the District of Columbia. The second counterclaim alleges that ABC published a defamatory article concerning this litigation in its newsletter on the same date. ABC seeks dismissal of these counterclaims.[1] In the alternative, it moves for summary judgment on the counterclaims.

## STANDARDS

### A. *Dismissal for Failure to State a Claim*

■ A federal court ruling on a motion to dismiss for failure to state a claim must review the sufficiency of the complaint. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Because the court rules before it receives any evidence, motions to dismiss are disfavored. *See* C. Wright & A. Miller, Federal Practice and Procedure, § 1357 (1984). The court should construe the allegations in the complaint most favorably to the pleader. The issue is not whether a plaintiff will ultimately prevail, and the court should not dismiss a claim merely because the pleadings indicate that the likelihood of a recovery is remote. *See Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686.

> In appraising the sufficiency of the complaint we follow ... the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted).

### B. *Summary Judgment*

■ Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the non-moving party's case. *Id.* When the moving party shows the absence of an issue of material fact, the non-moving party must go beyond the pleadings and show that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

■ The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party. *Id.* at 630–31. No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## DISCUSSION

### A. *Defendants' Motion to Dismiss*

Plaintiffs' first claim alleges a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. That statute provides that

> [e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal....

Courts have long recognized that, because restraint is "the very essence of contract," Section 1 would, if read literally, render the entire body of private contract law illegal. *See National Soc'y of Professional Eng'r v. United States,* 435 U.S. 679, 687–88, 98 S.Ct. 1355, 1363–64, 55 L.Ed.2d 637 (1978), (citing *Chicago Bd. of Trade v. United States,* 246 U.S. 231, 238, 38 S.Ct. 242, 244, 62 L.Ed. 683 (1918)). Therefore, in evaluating restraints imposed by contracts or agreements, two complementary categories

---

1. Though ABC repeatedly refers to the defamation claim in the singular, it is clear from its memoranda on the subject that its pending motions attack both counterclaims.

of antitrust analysis have been developed. *Id.* 435 U.S. at 692, 98 S.Ct. at 1365. The first category includes agreements "whose nature and necessary effect are so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality—they are 'illegal *per se.*'" *Id.* The second category covers agreements "whose competitive effect can only be evaluated by analyzing the facts peculiar to the business, the history of the restraint, and the reasons why it was imposed." *Id.* Under this second prong of analysis, commonly referred to as the "rule of reason," "the fact finder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977).

■ This case must be analyzed under the rule of reason because plaintiffs do not allege the type of activity traditionally held to be *per se* antitrust violations. This rule requires that a claimant alleging a violation of Section 1 of the Sherman Act initially establish: (1) an agreement among two or more persons or distinct business entities; (2) by which the persons or entities intend to harm or restrain competition; and (3) which actually injures competition. *Les Shockley Racing v. National Hot Rod Ass'n*, 884 F.2d 504, 507 (9th Cir.1989).

■ The requirement of injury to competition is consistent with the frequent observation that antitrust laws were enacted "for the protection of *competition,* not *competitors* . . . ." *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701, citing *Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962) (emphasis in original). An antitrust injury is an injury "of the type antitrust laws were intended to prevent, and that flows from that which makes defendants' acts unlawful." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 110 S.Ct. 1884, 1889, 109 L.Ed.2d 333 (1990) (citing *Brunswick*, 429 U.S. at 489, 97 S.Ct. at 698). Plaintiffs seeking recovery for violations of Section 1 of the Sherman Act must therefore plead and prove a reduction of competition in the market in general, and not merely an injury to themselves as competitors. *Shockley*, 884 F.2d at 508.

■ Here, as in *Shockley*, plaintiffs' Section 1 claim should be dismissed for failure to sufficiently allege an unreasonable restraint of or injury to competition. Plaintiffs here do allege that, by sharing "competitively sensitive, price related information," defendants have excluded them from "competing effectively" on construction projects. They do not, however, allege that they are precluded from bidding on these projects, or that they would not be awarded the projects if their bids were lower than those submitted. Plaintiffs are essentially complaining not that *competition* is being injured, but that they, as *competitors,* are being injured because defendants' cooperation allows defendants to compete too successfully. Allegations that plaintiffs have lost income because of exclusion from a market are insufficient. *Id.*

■ The exchange of information may violate antitrust laws when carried out to raise prices, *Maple Flooring Mfrs. Ass'n v. United States*, 268 U.S. 563, 585, 45 S.Ct. 578, 585, 69 L.Ed. 1093 (1925), or where circumstances suggest that the exchange of price information will stabilize industry prices, *United States v. United States Gypsum Co.*, 438 U.S. 422, 457, 98 S.Ct. 2864, 2883, 57 L.Ed.2d 854 (1978). Plaintiffs here do not allege that defendants fixed labor prices or the prices at which they would bid construction projects.

In opposing defendants' motion to dismiss their first claim, plaintiffs rely heavily on *Allen Bradley Co. v. Local Union 3, IBEW*, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939 (1945), *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), and *Connell Constr. Co. v. Plumbers and Steamfitters Local Union No. 100*, 421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975). Plaintiffs note that, in these cases, the United States Supreme Court condemned agreements between unionized competitors and unions to drive

non-unionized competitors from the marketplace.

Plaintiffs' reliance on these cases is misplaced. These cases focus on the scope of the labor antitrust exemption from the Sherman Act, a question not raised by the present motion.[2] Though the Supreme Court has concluded that the participation of unions would not immunize agreements between unions and others to exclude competition from antitrust liability, these cases do not dispense with the requirement that antitrust plaintiffs allege antitrust injuries. Plaintiffs' first claim for relief should be dismissed.

B. *Plaintiffs' Motion for Dismissal or Summary Judgment on NECA's Counterclaims*

1. Motion to Dismiss

ABC contends that NECA's defamation counterclaims are not compulsory because they do not arise out of the underlying "transaction or occurrence" as required by Fed.R.Civ.P. 13(a). It contends that independent jurisdictional grounds are required for this court to assert jurisdiction. ABC argues that, even if this court has jurisdiction, it should exercise its discretion to decline jurisdiction over the counterclaims because they raise difficult state law issues which would confuse the trier of fact "and/or lead to needless resolution of state law issues by the federal courts." It contends that inclusion of the counterclaims in this action will distract attention from the central antitrust issues in the case, and will raise conflict of law issues and substantive state law questions best left for resolution by state courts.

In addition, ABC asserts that NECA's counterclaims fail to state a claim upon which relief may be granted. It argues that the challenged statements were clearly privileged, and that they accurately characterized or quoted from the complaint.

■ Under Fed.R.Civ.P. 13(a), a defendant is required to raise as a compulsory counterclaim any claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim...." Federal courts may assert jurisdiction to consider state-law claims sharing a "common nucleus of operative fact" with federal claims, "such that [a plaintiff] would ordinarily be expected to try them in one judicial proceeding." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

■ Under 28 U.S.C. § 1367, federal courts have supplemental jurisdiction over claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Under 28 U.S.C. § 1367(c), a federal district court may decline to exercise this supplemental jurisdiction if the claim raises novel or complex issues of state law, the state-law claim predominates over the claim or claims over which the court had original jurisdiction, the court has dismissed claims over which it had original jurisdiction, or if there are other compelling reasons for declining jurisdiction.

■ The parties have cited, and I have found, no Ninth Circuit cases directly addressing the question whether counterclaims alleging post-filing defamation are compulsory. In *Pochiro v. Prudential Ins. Co.,* 827 F.2d 1246, 1249 (9th Cir.1987), the court identified defamation counterclaims concerning statements made both before and after the filing of an action as compulsory. The court noted that "any additional defamation [after the action was filed] would have been merely one in a series." *Id.* at 1251, n. 9. The court acknowledged that the Second Circuit has held that counterclaims based on alleged defamations occurring after the filing of an underlying action are not compulsory. *Id.,* citing *Harris v. Steinem,* 571 F.2d 119, 124 (2d Cir.1978).

---

**2.** For a thorough discussion of the labor exemption, *see Allen' Bradley,* 325 U.S. at 800–809, 65 S.Ct. at 1535–1539.

In the present case, of course, all the allegedly defamatory statements were made after the underlying action was filed. Though it is not clear under *Pochiro* whether any counterclaims based on these statements are compulsory, I am satisfied that the statements are so closely related to the underlying action that they form part of a single case or controversy, and that this court may assert supplemental jurisdiction. I further conclude that none of the bases for declining jurisdiction specified under 28 U.S.C. § 1367(c) apply, and it appears at this time that litigation of both the claims and counterclaims in a single forum will promote judicial economy. ABC's motion to dismiss for lack of jurisdiction, or through exercise of discretion, should be denied.

■ ABC's motion to dismiss for failure to state a claim should likewise be denied. ABC properly notes that privilege attaches to certain statements made concerning litigation.[3] This privilege is not, however, absolute and unconditional. *See Johnson v. Johnson Publishing Co.*, 271 A.2d 696, 697 (D.C.1970). Even if NECA is considered a public figure, ABC could be liable for defamatory statements made with actual malice. *See Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). NECA's allegation that defamatory statements were made "with knowledge of their falsity or with reckless disregard of whether or not they were false" sufficiently alleges malice to state a claim regardless of privileges that may attach concerning public figures and comment on matters of public concern.

2. Motion for Summary Judgment

ABC also moves for summary judgment on the defamation counterclaim, asserting that its statements were privileged, and that "there are no disputed facts under which NECA would be entitled to relief." It has submitted the affidavit of Charles Hawkins III, its Senior Vice President. Hawkins states that ABC did not publish

the statements in question with the intent to defame NECA, with knowledge of their falsity, or with reckless or negligent disregard for falsity.

The motion for summary judgment should be denied. The statement of one of ABC's officials denying malice does not demonstrate the absence of material issues of fact concerning that or other defamation issues. NECA has pointed out several discrepancies between the complaint and the allegedly defamatory statements. It has also submitted materials demonstrating that NECA and ABC have been engaged in a struggle over the legality of the job targeting program for some time. In the face of this record, a single affidavit denying malice is insufficient to support granting a motion for summary judgment. Material issues of fact remain concerning privilege defenses and malice.

CONCLUSION

Defendants' motions to dismiss the first claim (# 33 and # 40) should be GRANTED. Plaintiff ABC's motion for dismissal or summary judgment on defendant NECA's counterclaims (# 45) should be DENIED.

DATED this 27 day of December, 1991.

---

**3.** The parties apparently agree that the defamation laws of the District of Columbia apply to this case.